THRASH, A MINOR, APPELLANT, *v.* U-DRIVE-IT CO. ET AL., APPELLEES.

(No. 4201—Decided November 28, 1951.)

*Mr. Robert L. Culbertson, Mr. Charles E. Pierson* and *Messrs. Harrison, Spangenberg & Hull,* for appellant.

*Mr. H. A. Waltz, Mr. James Olds* and *Messrs. Wise, Roetzel, Maxon, Kelly & Andress,* for appellee U-Drive-It Company.

*Messrs. Buckingham, Doolittle & Burroughs,* for appellee Spot Motor Company.

DOYLE, J. This action was commenced by Donald Thrash, a minor, through his mother and next friend, and is directed against two companies: one, the U-Drive-It Company, which is "engaged in the business of owning and servicing motor vehicles which it rents for hire to the public," and the other, the Spot Motor Company, which is "engaged in the business of buying and selling new and used automobiles and trucks." Damages for personal injury were sought, which, it was claimed, proximately resulted from the negligence of the defendants in the conduct of their business through their respective sales of a secondhand motor vehicle.

At the conclusion of the opening statement of counsel for plaintiff in the trial of the action in the Court of Common Pleas of Summit County, the court entered judgment in favor of the two defendants and against the plaintiff, for the reason that the plaintiff's petition and the statement of counsel failed to state a cause of action against either or both defendants.

The appeal to this court is from that judgment, and we are asked to reverse the action of the trial court and remand the cause for trial.

The cause of action stated in the pleading, and orally by counsel, in brief, was as follows: The U-Drive-It Company owned and operated a truck in its business, the left front wheel of which was equipped with a type of rim and lock ring not designed to fit the wheel and "as a result of the mismatching of the lock ring and the rim * * * [the] said lock ring was loose and insecure, * * * was held in place by an inadequate bearing surface, and * * * its mounting bevel did not fit the mounting bevel of the rim, so that it was likely at any time during the normal usage of the truck to blow off under the pressure of the inflated tire, causing the tire to be released, the tube to blow out, and the truck to get out of control."

In August, 1946, the U-Drive-It Company traded the truck to the Spot Motor Company, which thereupon advertised it for sale. Subsequently, Gotthart T. Thrash, the father of the minor plaintiff, purchased it from the Spot Motor Company upon its representation that it was "in good operating condition." Thrash purchased the vehicle for general hauling use in connection with his business. Later, while it was being so used "at a lawful and proper rate of speed, said lock ring on the left front wheel suddenly and without warning blew off, and immediately thereafter the outer bead of the tire was released from the rim.

By reason of the sudden release of the left front tire bead, the truck became unmanageable, so that without fault of the driver it ran off the left side of the roadway and was hurled over an embankment. At said time and place the plaintiff, Ronald Thrash, was riding (as a passenger) in the rear body of said truck, and as the truck rolled over [and] down the embankment plaintiff was crushed underneath * * *, causing him * * * serious injuries * * *.''

The following specific charges of negligence were made against the respective defendants, which negligence in each case, it was asserted, proximately caused the plaintiff's damages.

As to the defendant Spot Motor Company:

''1. In failing to inspect said truck before reselling, to determine whether its tires were properly mounted with matching rims and lock rings.

''2. In failing to warn said Gotthart T. Thrash that the left front tire was insecurely mounted and that the truck was dangerous to operate, although the defendant knew, or in the exercise of ordinary care ought to have known, of the danger and hazard of said mismatched rim and lock ring.

''3. In lulling said Gotthart T. Thrash into a false sense of security by representing to him that the truck was in good operating condition, although the defendant knew, or in the exercise of ordinary care ought to have known, that said truck was in a dangerous and hazardous condition to drive.

''4. In placing on the market and selling to a purchaser, for use upon the public highways, a truck containing a latent and inherently dangerous defect, to wit, a mismatched rim and lock ring.''

As to the defendant U-Drive-It Company:

''1. In equipping the left front wheel of said truck with a mismatching rim and lock ring, which the de-

fendant knew, or in the exercise of ordinary care ought to have known, made the lock ring insecure and likely to blow off.

"2. In failing to warn the Spot Motor Company of the mismatched rim and lock ring.

"3. In failing to warn Gotthart T. Thrash, the purchaser of said truck, that the rim and lock ring were mismatched and insecure, although the defendant had actual knowledge that said Gotthart T. Thrash had purchased said truck from the Spot Motor Company.

"4. In failing to install on the left front wheel of said truck a lock ring of the proper type and size before putting said truck on the market where it would come into the hands of a purchaser who would use it upon the public highways.

"5. In placing upon the market for eventual sale to the public a motor truck containing a latent and inherently dangerous defect which would be hazardous to the life and limb of any one in the vicinity of the truck while it was being operated upon the highway."

In our consideration of the problems before us, we assume the truth of the allegations and charges made in the petition and opening statement of counsel, and consider such allegations as constituting the actual facts in the case.

At the outset, we find no cases in this state treating the same factual matter, although there are some which seem to lay the foundation of the branch of the law which we must examine.

■ In respect to the Spot Motor Company, did it owe a duty of care and vigilance to anyone other than the father of the injured boy, he being the immediate purchaser?

More than a half century ago, there arose in this county a case in which the Supreme Court of Ohio recognized tort liability for the negligent sale of an

inherently dangerous drug, regardless of privity of contract. A druggist negligently sold oil of bitter almonds instead of oil of sweet almonds to a customer for the use of his wife. After taking it internally, the wife died. Chief Justice Owen stated:

"It is not a sound proposition to say that a dealer in drugs, having in stock, and for sale, deadly poisons, owes no duty to persons who do not deal directly with him in relation to them. The public safety and security against the fatal consequences of negligence in keeping, handling and disposing of such dangerous drugs, is a consideration to which no dealer can safely close his eyes. An imperative social duty requires of him that he use such precautions as are liable to prevent death or serious injury to those who may, in the ordinary course of events, be exposed to the dangers incident to the traffic in poisonous drugs." *Davis* v. *Guarnieri*, 45 Ohio St., 470, at p. 492, 15 N. E., 350, 4 Am. St. Rep., 548.

Whether the old rule, based upon the opinion in *Winterbottom* v. *Wright*, 10 Meeson & Welsby, 109, 152 Eng. Repr., 402, that a manufacturer or vendor is not liable for negligence to one with whom he had no contractual relations, ever was strictly followed in this state, need not here be discussed. Certainly, at the time of the oil of bitter almonds decision, there was recognized the liability, of a negligent seller of things whose normal function was to injure or destroy, to a person other than the one in privity of contract.

In the year 1916, a rather startling decision was rendered by the Court of Appeals of New York. It is interesting to note that the court had at the time a precedent similar to ours in the bitter almond case—viz., *Thomas* v. *Winchester*, 6 N. Y., 397, 57 Am. Dec., 455. The 1916 New York decision held that the principle that the manufacturer of goods is liable for injuries to

third persons for defects therein, is not limited to things which in their normal operation are implements of destruction, but if the nature of the things—a new automobile, for instance—is such that it is reasonably certain to place persons in peril when negligently made, liability attaches, irrespective of contract, for failure to properly inspect and discover defects, coupled with knowledge of probable dangers therefrom. It was further held that the duty is independent of contract, and the obligation arises at law. *MacPherson* v. *Buick Motor Co.*, 217 N. Y., 382, 111 N. E., 1050, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440.

In respect to liability to third persons irrespective of privity of contract, Judge Cardozo, in writing for the New York court, expressed the thought, in reference to the sale of an automobile by a manufacturer, that Chief Justice Owen expressed in reference to the negligent sale of the drug. Cardozo, J.: ''In such circumstances, the presence of a known danger, attendant upon a known use, makes vigilance a duty. We have put aside the notion that the duty to safeguard life and limb, when the consequence of negligence may be foreseen, grows out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in the law.''

In *Sicard* v. *Kremer*, 133 Ohio St., 291, 13 N. E. (2d), 250, the Supreme Court of this state again approved the doctrine of the drug cases, and incidentally cited with apparent approval *MacPherson* v. *Buick Motor Co., supra.*

Consonant with the reasoning of the Ohio courts in relation to drugs and the celebrated New York case in relation to the sale of a new automobile, a majority of courts in the country which have had similar problems in recent years, have applied the general principles therein pronounced.

Reflecting the current opinions with reference to the sale of defective dangerous articles, including new and secondhand automobiles, is the following statement in 42 A. L. R., 1243, at p. 1250: "Where, in the exercise of ordinary sense [care], the seller of an article must know that if it is defective it will be imminently dangerous to persons whom he knows will come in contact therewith, a duty rests upon such seller to use ordinary care to ascertain the condition of the article and see that it is safe, especially where, by representation or warranties that the article is safe, he induces the sale; and if he fails to exercise ordinary care to ascertain the safety of the article, and as a result he actually sells it in an imminently dangerous condition, he is liable for personal injuries proximately resulting therefrom, at least, to that class of persons who he knows must come in contact with the article * * *." See, also, 170 A. L. R., 611, at p. 676, and cases cited; 5 American Jurisprudence, Automobiles, Section 349; 65 Corpus Juris Secundum, Negligence, Section 100 *et seq.*

Again reflecting the modern authorities and apposite the foregoing, there may be found in 2 Restatement of the Law of Torts (Negligence) the following:

"Section 388. One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

"(a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied:

"(b) and has no reason to believe that those for

whose use the chattel is supplied will realize its dangerous condition; and

"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so."

Under comment "c" of this section (388), the term "suppliers" applies to "vendors, lessors, donors or lenders irrespective of whether the chattel is made by them or by a third person."

"Section 389. One who supplies directly or through a third person a chattel for another's use knowing that the chattel is unlikely to be made reasonably safe before being put to a use to which the supplier should expect it to be put, is subject to liability for bodily harm caused by such use to those whom the supplier should expect to use the chattel or to be in the vicinity of its probable use * * *."

A few of the cases and texts commenting on the ideas of duty and obligation in the law of torts here under discussion, in addition to those already cited, are the following: *Flies* v. *Fox Bros. Buick Co.*, 196 Wis., 196, 218 N. W., 855, 60 A. L. R., 357; *Egan Chevrolet Co.* v. *Bruner*, 102 F. (2d), 373, 122 A. L. R., 987; *McLeod* v. *Holt Motor Co.*, 208 Minn., 473, 294 N. W., 479; *Jones* v. *Raney Chevrolet Co.*, 217 N. C., 693, 9 S. E. (2d), 395; *Bock* v. *Truck & Tractor, Inc.*, 18 Wash. (2d), 458, 139 P. (2d), 706; *McGuire* v. *Hartford Buick Co.*, 131 Conn., 417, 40 A. (2d), 269; 170 A. L. R., 611, at p. 676. See, also, documentation of Manufacturer's liability in 164 A. L. R., 569.

It now remains to state the law on this phase of the case, and then apply it to the Spot Motor Company. We pronounce the rule as follows: When a dealer in secondhand or used motor vehicles sells a used car which he knows, or in the exercise of ordinary care should know, is imminently dangerous to life or

limb when put to ordinary use, without notice to the purchaser of its defects or bad qualities, or when, by representations or warranties that the vehicle is in good operating condition, he or it induces the sale, such dealer is liable to any person who suffers an injury as a proximate result of a defective condition of the vehicle (existing at the time of the sale) when said vehicle is being used for the normal purposes for which it is designed. Under such circumstances, liability attaches to the seller for injuries which might have been reasonably anticipated, whether there was any contractual relationship between the parties or not.

The argument that this company was not the creator of the dangerous condition in installing a lock ring and rim which was not adaptable to the type of wheel in use on the vehicle, is not tenable. This jural problem was decided in *MacPherson* v. *Buick Motor Co.*, *supra*. There, the defective wheel was not made by the Buick Company, it was bought from another manufacturer. We subscribe to the precedent there established.

It is our conclusion that the pleadings and statements of counsel were sufficient to state a case against the Spot Motor Company, and, as a consequence, the court erred in entering its judgment for the said company.

█ The defendant U-Drive-It Company was charged with creating the dangerous condition, and with negligence in "placing upon the market for eventual sale to the public a motor truck containing a latent and inherently dangerous defect, which would be hazardous to the life and limb of anyone in the vicinity of the truck, while it was being operated on the highway," in failing to warn its vendee, the Spot Motor Company, of the condition of the truck, as well as its failure to notify the purchaser, Thrash, although it knew of the

sale to Thrash, and knew that said truck would be used for the purpose for which it was designed.

Heretofore, reference has been made to *MacPherson* v. *Buick Motor Co.*, and approval has been given to the principles therein pronounced. It will be noted, however, that there the court was speaking of the sale of a new automobile, to be used by persons other than the immediate purchaser *without new tests* after it left the factory where the consequences of negligence were reasonably to be foreseen to third person purchasers in the marts of trade. In the course of the opinion, the distinguished jurist who authored it, drew an analogy in the law which measures the liability of landlords, as follows: "If A leases to B a tumble-down house he is not liable, in the absence of fraud, to B's guests who enter it and are injured. This is because B is then under the duty to repair it, the lessor has the right to suppose that he will fulfill that duty, and, if he omits to do so, his guests must look to him." (Compare *Burdick* v. *Cheadle*, 26 Ohio St., 393, 20 Am. Rep., 767.)

So, here, the U-Drive-It Company had the right to suppose that its vendee, the Spot Motor Company, engaged in the business or trade of buying and selling used cars, would, in the absence of representation or warranty that the car was in good and safe condition, fulfill its duty to examine and repair an old and dangerous vehicle before selling it for use on the highways without making disclosure to its vendee of the vehicle's dangerous condition. And, especially, did the U-Drive-It Company have the right to suppose that its vendee would not misrepresent the dangerous car to a purchaser, while knowing that the vehicle was to be put to use on the highways.

On the theory that foresight of the consequences measures the creation of the duty and consequent liability, injury to third persons was not here to be rea-

sonably foreseen as the result of the sale to the Spot Motor Company, in the absence of false representations.

In deciding this phase of the case, we must appraise and measure the interests, the experience and the business or economic sense of a community. Every one knows that it is common practice for owners of used cars to sell them or trade them in on other cars to secondhand dealers. The amount of money received from the sale or the amount of credit given on the purchase of another, is generally dependent on the make, age and condition of the vehicle. The used car dealer has general knowledge of the various degrees of imperfection in old and worn cars, and has the technical knowledge to ascertain defects and weaknesses, and he buys them on that basis. They are not sold with the knowledge or expectation that they will be resold to third persons without examination or tests. They are sold to a person or company engaged in and practicing a trade or business, and the rule is general that there need be no warning to one in a particular trade or business against a danger generally known to that trade or business. *Rosebrock, Admx.,* v. *General Electric Co.,* 236 N. Y., 227, 140 N. E., 571.

It is our conclusion that the court properly entered its judgment in favor of the U-Drive-It Company.

*Judgment affirmed in part and reversed in part.*

HUNSICKER, P. J., and STEVENS, J., concur.