**W. E. HEMBREE, Jr., doing business as Hembree Chevrolet, Plaintiff in Error,**

**v.**

**Roy SOUTHARD, a minor, by his mother and next friend, Vivian Wilson, Defendant in Error.**

No. 37917.

Supreme Court of Oklahoma.

May 19, 1959.

A. Carl Robinson, Julian B. Fite, Muskogee, for plaintiff in error.

Whit Pate, William D. Mobley, Poteau, for defendant in error.

JOHNSON, Justice.

■ This case is one of first impression in this jurisdiction and involves, among other things, the application of the principle of law that a used car dealer, though not an insurer of the safety of the vehicles sold by him, must, to avoid liability for damages for personal injuries sustained by a prospective buyer, arising out of the prospective buyer's authorized use of a used car with a defective front wheel brake, unknown to the prospective purchaser, but represented by the dealer to be in good running condition at the time of delivery, exercise reasonable or ordinary care in making inspections and tests to discover defects which would make the used car dangerous to those who may use it or come in contact with it; and, upon failure of his duty in this respect, the used car dealer is charged with knowledge, at the time of delivery, of defects which were discoverable in the exercise of ordinary care and is amenable to an action for damages resulting from such defect. See 60 C.J.S. Motor Vehicles § 165 (b) Liability of Dealer, (2) Used Car Dealer, pp. 503–504; 5 Am. Jur., Automobiles, Sec.

349, p. 690, and cases cited in the footnotes.

For an application of the above rule of law in other jurisdictions, see the following cases: Flies v. Fox Bros. Buick Co., 196 Wis. 196, 218 N.W. 855, 60 A.L.R. 357; Egan Chevrolet Co. v. Bruner, 8 Cir., 102 F.2d 373, 122 A.L.R. 987; Bock v. Truck & Tractor, Inc., 18 Wash.2d 458, 139 P.2d 706; Jones v. Raney Chevrolet Co., 213 N.C. 755, 197 S.E. 757; Kothe v. Tysdale, 233 Minn. 163, 46 N.W.2d 233; Thrash v. U-Drive-It Co. & Spot Motor Co., 93 Ohio App. 388, 113 N.E.2d 650; Gaidey Motors, Inc. v. Branan, Ky., 268 S.W.2d 627; Standard Oil Co. v. Leaverton, 239 Mo.App. 284, 192 S.W.2d 681.

It is upon the alleged failure of the defendant, W. E. Hembree, Jr., a used car dealer, to comply with this rule of law and resulting personal injuries to plaintiff that plaintiff, Roy Southard, predicates his action.

The plaintiff's evidence was that the defendant, W. E. Hembree, Jr., through his employee, Herschel Christian, delivered to Roy Southard, a minor, and his mother Vivian Wilson, prospective purchasers of a secondhand car, the used automobile in question to be test driven by them; that during the second evening it was in their possession Roy Southard, while driving the car on the highway near Heavener, Oklahoma, passed some cattle on the highway, when suddenly one jumped in front of the car; that he applied the brakes with maximum force, and because of a defective front wheel brake the wheel locked and the steering wheel was immediately jerked from his hand, and the car swerved at a sharp angle and ran off the highway and turned over several times; that by reason thereof he suffered serious and permanent injuries.

The alleged negligent failure of the defendant to exercise reasonable or ordinary care in making tests to discover and repair the defective front wheel brake, which allegedly would have made the used car safe to those who were to use it, and

the alleged contributory negligence of the plaintiff as being the proximate causes of the accident constituted the principal issue in the jury trial, which resulted in a verdict in favor of the plaintiff.

The trial court overruled defendant's motion for a new trial and rendered judgment on the verdict. The defendant appeals.

Defendant first contends that plaintiff failed to establish by competent evidence any primary negligence on the part of defendant, and thereby failed to make a jury case, and that defendant's demurrer to the plaintiff's evidence should have been sustained, and, at most, defendant should have had his motion for a new trial sustained.

■ In the instant case, we are governed by the rules applicable to civil actions generally. 60 C.J.S. Motor Vehicles § 167. That is, in considering the trial court's action on defendant's demurrer to the evidence and his motion for a new trial, we will consider the facts and circumstances and reasonable inferences to be drawn therefrom in the light most favorable to plaintiff's theory of the case in order to determine the question of defendant's negligence (and other issues involved in the case) and apply the well-established rule that in an action of legal cognizance, tried to a jury, the jury's verdict and judgment based thereon will not be set aside if there is any evidence or inferences to be drawn therefrom, reasonably tending to sustain it.

■ On the question of defendant's negligence the record discloses that the defendant through his authorized employee and salesman traded for the used car in question; that on the third day after the car was traded for the same salesman delivered the car to the plaintiff, a seventeen year old boy, and his mother, prospective purchasers, representing it to be in good running condition and safe to drive.

The evidence established the fact that when the defendant traded for the car the salesman drove it around the block. This was the extent of the defendant's inspection of the car before turning it over to the plaintiff and his mother to be test driven.

The car was placed on defendant's used car lot on Saturday afternoon when traded for, and, as far as any competent testimony was concerned, it stayed there until delivered to the plaintiff the next Tuesday evening. The only time it was moved, apparently, was when another salesman drove it a few blocks to the school house in Heavener to show to a prospective buyer.

The expert evidence shows that the brake complained of consisted of a defective right front wheel cylinder which was a mechanism located inside the brake drum of the wheel. This mechanism is used as a booster for the hydraulic fluid which flows from the master cylinder through tubes to each wheel on an automobile. This cylinder has a plunger which expands under hydraulic pressure, pushing the stationary brake bands out against the brake drum which is continuously revolving around them when the automobile is in motion. This mechanism is on all four of the wheels of an automobile. The friction between the brake bands when expanded and the revolving drums results in the braking effect of an automobile and is what causes a car to stop when the brakes are applied. It is apparently not too uncommon for these wheel cylinders to wear and start leaking hydraulic fluid. When this happens, the fluid, through the force of gravity, drops down on the revolving brake drum and the result is that instead of the usual smooth friction set up between the brake bands and the brake drum there is an unusual amount of braking effect or "grabby" friction, thus causing that particular wheel to "set" more quickly than the other three wheels. Under these circumstances when the brake is applied with emergency force, the wheel will "lock" or, in effect, cease to turn at all. When this happens on one of the wheels of a moving automobile and the front wheel "locks," the effect is to spin the steering wheel out of the driver's hand and cause complete loss of control of the automobile. Plaintiff testified that that was what happened

when he was driving the car. In this respect the plaintiff's evidence is undisputed.

Plaintiff's expert witnesses testified that an examination of the right front wheel, including the brake drum, brake band, and tube showed a leaky wheel cylinder which permitted the hydraulic brake fluid to permeate the braking mechanism, resulting in a dangerous, defective, inefficient braking operation, and that such defect was a result of hydraulic fluid on the brake drum; that a mere cursory examination of the wheels by a mechanic would have revealed the defect, and that though his examination of the braking mechanism of the wheel was subsequent to the accident, that based upon the testimony of plaintiff as to what happened when he applied the brakes at the time of the accident, the hydraulic brake fluid was leaking onto the brake band and drum prior to the accident, and that when the car was driven a few miles the fluid would warm up and cover the brake drum which would, when the brakes were applied, result in the grabby effect hereinbefore described.

■ However, in this connection it is argued that since the plaintiff, while driving the car on the first evening on one occasion discovered that the brake would "grab" when he applied the brakes, that on the second evening he should have known that the brakes were dangerous, and that in addition thereto that he was speeding the car at the time of the accident and thereby lost control of it, and that this was the cause of the accident. The referred to evidence tends to develop two things. First, that the brakes on the automobile were defective. Second, that the matter of brakes grabbing put plaintiff on notice that the brakes were defective, and that plaintiff was guilty of negligence in continuing to thereafter operate the automobile.

On the last above-mentioned phase of this case, the plaintiff testified in substance that he was not a mechanic and did not know anything about the mechanism of automobile braking systems and had been driving without assistance about a year or since he was sixteen years old and eligible for a driver's license; that on the first evening that he had the car he drove it around town (Heavener) and out in the country a few miles, and that on the way back to town when he went around a curve on a dirt and graveled highway and applied the brakes that the right front wheel locked and swerved the car almost off the highway; that other than this one occasion he did not notice anything wrong with the brakes; that on the second evening while on the way back from a seventeen-mile trip to the country that when passing some cattle (at about 50–55 miles per hour, which was corroborated by a highway patrolman) one suddenly ran in front of him, and that when he applied the brakes with emergency force that the right front wheel locked, jerking the steering wheel from his hand, culminating in the loss of control of the car as hereinbefore described.

The matter of whether plaintiff was in fact guilty of negligence in continuing to operate the automobile after he learned or should have learned the first evening that he drove same that the brakes were defective, and whether said negligence directly contributed to the accident under consideration, were questions of fact for the jury to consider under proper instructions from the court. On this issue the trial court in his instructions summarized the allegations of defendant's answer to the effect that if the brakes were defective the plaintiff knew or should have known thereof and that plaintiff was therefore negligent in operating the automobile under said conditions. The court also gave an instruction in which contributory negligence was defined and the effect of plaintiff's contributory negligence, if any, was explained. The defendant does not contend that this instruction was erroneous and we do not so find.

■ We have held on repeated occasions that contributory negligence is a question of fact for the jury. Art. 23,

Sec. 6 of the Oklahoma Constitution reads as follows:

"The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."

In St. Louis & S. F. R. Co. v. Hart, 45 Okl. 659, 668, 146 P. 436, 439, relative to the scope and effect of Art. 23, Sec. 6, supra, we said:

"* * * As we have said before, in this jurisdiction the question of contributory negligence is always for the jury. At most, the only function of the court is to define for the jury the meaning of the term 'contributory negligence,' as used in section 6, supra, and instruct them that it is always a question of fact for their determination. In no event is the court authorized to direct a verdict or sustain a demurrer to the evidence upon the ground that it conclusively appears that the plaintiff is guilty of contributory negligence as a matter of law."

In Moore v. Johnson, 39 Okl. 587, 136 P. 422, 423, this was pointed out:

"(6) The next proposition presents the question of contributory negligence. Plaintiff in error assumes that because of the fact that defendant in error called attention to the defective condition in which the tank was set up and expressed some doubt as to its safety, notwithstanding the fact that she was assured that it was perfectly safe and that there need be no danger, the court as a matter of law should have found her guilty of contributory negligence. Some 12 to 15 pages of the brief are devoted to a discussion of this proposition and a great many authorities cited. But this proposition is settled by the provisions of our Constitution which makes the question of contributory negligence or assumption of risk a question of fact to be determined by the jury. See section 6, art. 23 of the Constitution. Also Chicago,

R. I. & P. Ry. Co. v. Baroni, 32 Okl. 540, 122 P. 926; Chicago, R. I. & P. Ry. Co. v. Beatty, 34 Okl. 321, 118 P. 367, 126 P. 736 [42 L.R.A.,N.S., 984]; Chicago, R. I. & P. Ry. Co. v. Hill, 36 Okl. 540, 129 P. 13, 43 L.R.A.,N.S., 622; Frederick Cotton Oil & Mfg. Co. v. Traver, 36 Okl. 717, 129 P. 747."

The plaintiff's evidence clearly demonstrates the conclusiveness of the expert witnesses' evidence on the leaky condition of the right front wheel brake, and the resulting consequences of such faulty brake which would only become noticeable after the car had been driven several miles as suggested by the expert testimony hereinbefore narrated, all of which, due to plaintiff's lack of experience and knowledge of the braking mechanism, was unknown to him. Thus, under these circumstances the jury was justified in finding that the defective front wheel brake was the proximate cause of the accident, injury and damages sustained.

■ While it is true that defendant's expert evidence was somewhat in conflict with the plaintiff's, yet the question of negligence remained a question of fact for the jury; it is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence becomes one of law for the court. Egan Chevrolet Co. v. Bruner, supra.

The facts in this case do not justify our invasion of the jury's right to draw their own conclusion on the question of primary negligence.

Plaintiff's pleadings and evidence brought his action within the purview of the rule of law herein stated and as announced in Thrash v. U-Drive-It Co., 158 Ohio St. 465, 110 N.E.2d 419, and related cases, supra.

■ In the first and fourth paragraphs of the syllabus of the Thrash case, supra, it is stated:

"1. To establish actionable negligence it is fundamental that the one seeking recovery must show the exist-

ence of a duty on the part of the one sued not to subject the former to the injury complained of, a failure to observe such duty, and an injury resulting proximately therefrom. * * *

"4. Although a dealer in used motor vehicles is not an insurer of the safety of the vehicles he sells, he is generally under a duty to exercise reasonable care in making an examination thereof to discover defects therein which would make them dangerous to users or to those who might come in contact with them, and upon discovery to correct those defects or at least give warning to the purchaser. Such rule is of particular significance where the sale of such a vehicle is accompanied by representations or warranties as to its fitness for use."

The résumé of the evidence clearly demonstrates that the defendant failed to exercise the ordinary or reasonable care required of him as a used car dealer in testing or examining the automobile to discover defects which made it dangerous to the users of it, and that such failure resulted in the undiscovered defective brake which was the proximate cause of the accident and the resulting injuries to the plaintiff. Therefore, defendant's demurrer to the plaintiff's evidence on the question of primary negligence and his motion for a new trial on that issue were properly overruled.

It is not, under the facts of this case, as argued by the defendant, a question of defendant's liability being wrongfully established by an inference upon an inference. It is a question of defendant's failure to exercise the reasonable or ordinary care required of him as a used car dealer in checking the used car for defects dangerous to the prospective purchasers as authorized users of it; that was and is the determining factor in establishing defendant's liability. Therefore, the cases cited and relied upon by defendant on this question are not in point.

It is next contended that by reason of an erroneous instruction, misconduct of counsel, or because of bias or prejudice, the verdict of the jury was excessive.

In this connection the plaintiff in error urges there was reversible error, and that the verdict was excessive upon several grounds, including alleged miscalculation resulting from erroneous instruction, or because of alleged errors in argument of counsel, or because of bias or prejudice, or "because of some combination of these elements." We have considered all such contentions and do not find any reversible error. However, we are convinced from the entire record that the verdict is excessive based upon a "combination of these elements" as the plaintiff in error urges in his brief.

The defendant argues that in the erroneous instruction herein referred to on the measure of damages the trial court erroneously included, among other things, impairment of plaintiff's earning capacity after he reaches the age of 21 years. He relies primarily upon the case of Lone Star Gas Co. v. Parsons, 159 Okl. 52, 14 P.2d 369. In that case the child injured was of very tender age. Its injury was an amputated finger, a split thumb and burned legs. In effect, it was our conclusion therein that by reason of the nature and extent of the harm caused by such injuries it was not clear that the earning capacity would be impaired, and the item should have been wholly eliminated from consideration. He also cited the case of Kennedy v. Van Horn, 77 Okl. 100, 186 P. 483, wherein there was no allegation as to the plaintiff's earning capacity, this court holding that impairment thereof was not properly within the issues.

The converse to be drawn from those cases is, where it is alleged and proved that by reason of the nature and extent of the injuries to a minor, his or her earning capacity after majority will be impaired, under proper instructions such may be considered by the jury in reaching a determination as to the amount of

damages to which the minor is entitled. In such case it matters not that the minor has spent his time in school or has never earned anything if the evidence discloses in some measure the probable effect of the injuries on the future earning power. See Pawnee Farmers' Elevator & Supply Co. v. Powell, 76 Colo. 1, 227 P. 836, 37 A.L.R. 6, and cases of like import.

This is in no wise in conflict with the case of City of Miami v. Finley, 112 Okl. 97, 240 P. 317, cited and relied upon by plaintiff. It is in harmony therewith. That was a wrongful death action. This court held that prospective damages on account of impairment of earning capacity after the age of majority is a proper element of damages to be considered. See also Foster v. Higginbotham, 186 Okl. 276, 97 P.2d 63.

■ The plaintiff's evidence discloses a severe hip injury requiring a pin therein and multiple injury to the left arm. Restricted movement thereof was demonstrated. The pictures introduced disclose the disfigurement to the arm and indicate an apparent limitation of movement. The permanency of the injury thereto is also apparent. The medical testimony, though somewhat limited, tends to show the permanent effect of such injuries.

It is further disclosed that plaintiff was seventeen years of age and in high school and would have graduated that year, 1957; that he worked at a filling station prior to the injury; that it was his plan to become a minister and had been since he was twelve years of age. It was stipulated that his life expectancy was 49 years. It is apparent from the testimony that probably he will always suffer pain by reason of such injuries.

The nature and permanency of the injuries, apparent from observation, coupled with the demonstrated limitation of movement and the indication of constant pain, are such that impairment of earning capacity after reaching the age of 21 years of the plaintiff is a proper element of damage for consideration by the jury under proper instructions. The character of the evidence is such that it cannot be said as a matter of law that his earning capacity after reaching majority will not be impaired regardless of the vocation he may enter. Thus it was proper to submit such element of damage to the jury.

Under the circumstances of this case we are of the opinion that the verdict for $65,000 and judgment based thereon is excessive to the extent of $25,000, and that the ends of justice require that a new trial be granted unless the plaintiff files a remittitur; otherwise, the judgment is sustained by the evidence and the law. Public Service Company of Oklahoma v. Hawkins, 194 Okl. 272, 149 P.2d 783, 790. Therein it was said:

"However, a thorough consideration of our former decisions discloses that the rule is well settled that when the amount of damages awarded for wrongful death is so excessive as to indicate that the jury was actuated by bias, prejudice, or passion, it is the duty of this court to determine and hold that the verdict is excessive and to remand the cause with directions to the trial court to grant a new trial unless proper remittitur is filed by the plaintiff."

We have examined this record with care, and in view of the remittitur required herein, a further discussion of other contentions or assignments of error would serve no useful purpose. Suffice it to say that the questions at issue were fairly submitted to the jury under proper instructions of the court, and finding no reversible error in this case, except that the verdict is excessive, the judgment of the trial court is affirmed upon plaintiff's filing a remittitur in the sum of $25,000 within ten days after a decision in this case; otherwise the case is reversed and remanded for a new trial. Public Service Company of Oklahoma v. Hawkins, supra.