Mike BRUCE et al., Plaintiffs,

v.

MARTIN–MARIETTA CORPORATION, a Maryland Corporation, and Ozark Airlines, Inc., a Missouri Corporation, Defendants.

Civ. No. 74–612–D.

United States District Court,
W. D. Oklahoma.

July 30, 1975.

See also, D.C., 418 F.Supp. 829.

John W. Norman, Larry A. Tawwater, Oklahoma City, Okl., for plaintiffs.

George W. Dahnke, Oklahoma City, Okl., for defendant Ozark Airlines, Inc.

## ORDER

DAUGHERTY, District Judge.

This is a products liability action arising from the crash of a Martin 404 aircraft on October 2, 1970 near Silver Plume, Colorado. Multiple Plaintiffs have joined in this action either seeking redress for injuries sustained in the crash or bringing actions

on behalf of persons killed therein. Plaintiffs originally brought separate actions in the District Court of Oklahoma County, State of Oklahoma against multiple Defendants to include the Defendants herein. Joined as Defendants herein are Martin-Marietta Corporation which manufactured the aircraft and Ozark Airlines (Ozark) which had owned the aircraft for a period of time prior to the crash during which time it used the aircraft in question in its air carrier operations.

The Complaint alleges that the crash resulted from the Defendants' negligence in the design, manufacture, inspection, service, and equipping of said aircraft. Plaintiffs in the Complaint also urge that both Defendants were negligent in failing to equip and maintain the aircraft in a crashworthy condition. They assert the seats and seat assemblies did not incorporate proper design characteristics to minimize the possibility of seat failure in the event of a crash. They further urge that the aircraft was not designed to minimize the possibility of fire in the event of a crash. Plaintiffs also contend that the aircraft was defective because the power of the engines was degraded by improper engine parts. They urge that both Defendants are strictly liable for the alleged defects in the aircraft and further that defendants breached an implied warranty that the aircraft was safe to fly and that it incorporated crashworthy characteristics.

Defendant Ozark has filed a Motion for Summary Judgment. Said Motion is based on several legal propositions which include the following: (1) The doctrine of strict liability is not applicable to it as a mere former owner and user of the aircraft; (2) It had no duty to Plaintiffs to inspect for or correct the alleged defects; (3) It is not liable under an implied warranty theory; and (4) The crashworthiness doctrine should not be applied to the former owner of a product which did not design or re-design same. Said Motion which is accompanied by a Brief also is supported by an Affidavit by one of Defendant Ozark's attorneys. Said Affidavit, which is not controverted, contains the following facts which are relevant to the Court's consideration of the instant Motion: (1) Defendant Ozark acquired the aircraft in question from another airline on December 23, 1965 and used same in its air carrier operation until June 7, 1967 when Ozark sold same to Fairchild-Hiller Corporation (Fairchild) which took possession of same on June 12, 1967; (2) Fairchild thereafter placed the aircraft in storage in Las Vegas, Nevada, and later sold same to Jack Richards Aircraft Co. (Richards) which owned same at the time of the crash; (3) Defendant Ozark made no modification to the seating configuration during the period it owned the aircraft involved in the crash; (4) The sale from Ozark to Fairchild was made in connection with the purchase by Ozark of a quantity of new aircraft manufactured by Fairchild. A copy of the Sales Agreement dated May 27, 1967, is attached to the Affidavit.

Plaintiffs in their Response (captioned Reply) make the following contentions: (1) Defendant Ozark should be subjected to the strict liability doctrine because it purchased large numbers of transport aircraft and then sold same on a regular basis and thus placed same in the stream of commerce; (2) Ozark as a seller of a used aircraft had a duty to inspect and test same for defects prior to the sale; (3) Plaintiffs have a valid cause of action based on breach of warranty pursuant to the Uniform Commercial Code; and (4) Ozark should be subjected to liability under the crashworthiness doctrine because it made repairs and alterations on the aircraft.

Defendant Ozark has filed a Reply Brief which contains the following contentions: (1) The application of the strict liability doctrine to a user of the aircraft is unprecedented and also violative of the fundamentals of said doctrine; (2) Ozark as a former owner of the aircraft owed no duty under a negligence theory to remote users of same; (3) Ozark disclaimed all warranties when it sold the aircraft and further that warranties as claimed by Plaintiffs do not arise from the sale of used goods by a non-merchant; and (4) The crashworthiness doc-

trine has not been and should not be applied to a mere user of a product.

Both parties have briefed the choice of law question and agree that this Court must follow the prevailing Oklahoma State Court rulings on determining the applicable law to be applied. Both parties to this Motion contend that the laws of Missouri, Oklahoma, or Colorado should be applied, and further contend that the laws of these three states are virtually identical. The Court is of the opinion that it must make a choice and this of course must be the first matter considered in ruling on the instant Motion.

The case at hand being based on diversity jurisdiction requires that the Court apply conflicts of law rules which conform to those prevailing in the State Courts in which the Federal Court is seated. *Klaxon Co. v. Sentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Westric Battery Co. v. Standard Electric Co.,* 482 F.2d 1307 (Tenth Cir. 1973). Oklahoma recently adopted the "significant contacts" test for application in tort cases in *Brickner v. Gooden,* 525 P.2d 632 (Okl.1974). It was held said test should include consideration as follows:

"The factors to be taken into account and to be evaluated according to their relative importance with respect to a particular issue, shall include:

(1) the place where the injury occurred,

(2) the place where the conduct causing the injury occurred,

(3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(4) the place where the relationship, if any, between the parties occurred."

In looking to the conflicts of law question to be determined in considering the instant Motion, it must be kept in mind that this is a products liability action and as such differs from an action based on the operation of the aircraft. See *In re Air Crash Disaster Near Silver Plume, Colorado,* 368 F.Supp. 810 (Jud.Pan.Multi.Lit.1973) which involved another case arising from the crash which gives rise to the instant litigation.

The issues raised between Plaintiffs and Defendant Ozark arise from said Defendant having previously owned and operated the aircraft which crashed under subsequent ownership and operation. The record before this Court indicates that Ozark's operation of this aircraft was conducted from Ozark's home base in St. Louis, Missouri.

Looking to the factors to be taken into consideration in applying the "significant contacts" test, the Court finds as follows: (1) The place the injuries and deaths occurred is Colorado but this factor is not of significant importance as said state was merely the place where a transient aircraft crashed while passing through said state. (2) The place where the conduct allegedly causing the injuries and deaths appears to be Missouri where the aircraft was based while owned and operated by Defendant Ozark and as the claims against said Defendant arise from its former ownership of the aircraft this state has significant contacts with the issues between Plaintiffs and Defendant Ozark which contracts are of major importance. (3) The domicile and residence of the parties Plaintiff is not disclosed in the Complaint or in any documents in support of the instant Motion but the Court has determined from another Motion filed by Defendant Martin-Marietta that most but not all of the Plaintiffs or Plaintiffs' decedents were domiciled in Kansas at the time of the crash. This factor is of relatively major significance but such significance is minimized by the fact that all Plaintiffs or Plaintiffs' decedents were not domiciled in Kansas and further minimized by the fact that Plaintiffs elected to file the instant action in a jurisdiction other than where most of the Plaintiffs were domiciled. Two of the Plaintiffs' decedents were domiciled in Oklahoma at the time of the crash and this being the only contact with Oklahoma as to the issues involved between Plaintiffs and Defendant Ozark it is determined that the State of Oklahoma should be eliminated from consideration in this determination as to the applicable law.

Defendant Ozark is a Missouri corporation with its offices and major operations located in Missouri and such contacts are significant in that this is an action against a Missouri corporation and arising out of activities conducted therein. (4) There is no direct relationship between the parties and thus said factor need not be considered. In consideri g and analyzing the several factors involved relating to the issues between Plaintiffs and Defendant Ozark, the Court determines that the most significant contacts are with the State of Missouri and thus the law of Missouri is applicable in considering the instant Motion for Summary Judgment.

The "crashworthiness" doctrine is an extension of or form of an ordinary products liability action and before the Court must determine if said doctrine should be applied to the claims asserted herein against Defendant Ozark, it must be determined if said Defendant would be liable to Plaintiffs under any of the common theories under which products liability cases are pursued and which theories Plaintiffs have asserted herein.

■ The Missouri Courts have recognized that "strict liability" and "implied warranty" have no substantive difference since both are of a tort nature. *Keener v. Dayton Electric Manufacturing Company,* 445 S.W.2d 362 (Mo.1969); *Katz v. Slade,* 460 S.W.2d 608 (Mo.1970); and *Giberson v. Ford Motor Company,* 504 S.W.2d 8 (Mo.1974). In reading these cases, it appears that the theories of strict liability and implied warranty[1] have thus been "merged" into one

theory of recovery for products liability actions under Missouri law.[2] Negligence has been retained as a separate theory. This Court finds that it need only consider the theories of strict liability and negligence in considering the instant Motion.

Missouri adopted the strict liability theory in the case of *Keener v. Dayton Electric Manufacturing Company, supra,* and has followed the doctrine in numerous cases. The Missouri Supreme Court has adopted the theory and rule stated in Restatement Torts 2d, § 402A.

In *Katz v. Slade, supra,* the issue decided by the Missouri Supreme Court was whether the class of parties liable under the strict liability doctrine should be enlarged to include others than manufacturers and sellers engaged in supplying products. The Court after an extensive discussion of the basic policies underlying the reason the strict liability doctrine was adopted, which included reference to Comments c. and f. following § 402A, held as follows:

"Under the circumstances of this case we adhere to the previous holdings restricting the application of the rule of strict liability in tort to mass producers and distributors of the products of industry."

Thus, in the instant case, it must be determined whether Defendant Ozark as a commercial operator of aircraft is engaged in the distribution of products of industry when it sells a used aircraft after acquiring a newer model aircraft with which to conduct its operations.[3] Restatement Torts 2c, § 402A provides:

1. Plaintiffs' contention that they have a cause of action for breach of warranty pursuant to the Uniform Commercial Code is not borne out by an examination of Missouri Statutes § 400.-2–318 which discloses Missouri has adopted that version of U.C.C. § 2–318 which extends warranties for personal injuries only to purchasers of a product, his family, and guests in his home. Fairchild was the purchaser of the aircraft from Defendant Ozark and none of the Plaintiffs appear to have the required relationship to said purchaser.

2. In the case of *Hoppe v. Midwest Conveyor Company, Inc.,* 485 F.2d 1196 (Eighth Cir.

1973) the Court observed in footnote 1a as follows:

"Although plaintiff has alleged two separate counts, the claim of implied warranty and the count of strict liability are treated alike, at least, in Missouri. See *Keener v. Dayton Electric Mfg. Co. . . . .*"

3. Although Plaintiffs claim the sales agreement from Ozark to Fairchild is evidence of a straight sale and not of a tradein, an examination of said Agreement discloses that delivery of the Martin 404 aircraft from Ozark to Fairchild was scheduled concurrently with the delivery of a corresponding new aircraft from Fairchild to Ozark.

"(1) One who sells any product in a defective condition reasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

The parties to the instant Motion are not in agreement as to whether Defendant Ozark meets the requirements of part (1)(a) of being engaged in the business of selling used aircraft. Comment f. to § 402A provides:

"f. Business of selling. The rule stated in this section applies to any person engaged in the business of selling products for use or consumption. It therefore applies to any manufacturer of such a product, to any wholesale or retail dealer or distributor, and to the operator of a restaurant. It is not necessary that the seller be engaged solely in the business of selling such products. Thus the rule applies to the owner of a motion picture theatre who sells popcorn or ice cream, either for consumption on the premises or in packages to be taken home.

The Rule does not, however, apply to the occasional seller of food or other such products who is not engaged in that activity as a part of his business. Thus it does not apply to the housewife who, on one occasion, sells to her neighbor a jar of jam or a pound of sugar. Nor does it apply to the owner of an automobile who, on one occasion, sells it to his neighbor, or even sells it to a dealer in used cars, and this even though he is fully aware that

the dealer plans to resell it. The basis for the rule is the ancient one of the special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products which may endanger the safety of their persons and property, and the forced reliance upon that undertaking on the part of those who purchase such goods. This basis is lacking in the case of the ordinary individual who makes the isolated sale, and he is not liable to a third person, or even to his buyer, in the absence of his negligence. An analogy may be found in the provision of the Uniform Sales Act, § 15, which limits the implied warranty of merchantable quality to sellers who deal in such goods; and in the similar limitation of the Uniform Commercial Code, § 2–314, to a seller who is a merchant. This Section is also not intended to apply to sales of the stock of merchants out of the usual course of business, such as execution sales, bankruptcy sales, bulk sales and the like."

Both parties to the instant Motion contend that this comment supports their respective positions. Plaintiffs urge that the Court should look to the provisions of the Uniform Commercial Code which define merchant. Said provision is found in U.C.C. § 2–104 which states:

"(1) 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill."

■ Plaintiffs make the bald assertion that Defendant Ozark qualified as a "merchant" under such definition by holding itself out as having knowledge or skill peculiar to the practices or goods involved in the transaction. They fail to support such assertion by factual allegations. The state of the record fails to disclose Defendant Ozark

has held itself out or represented itself to do anything other than operate aircraft for the purposes of transporting passengers and freight. In *Downs v. Shouse,* 18 Ariz.App. 225, 501 P.2d 401 (1972) the Court analyzed § 2–104 supra, and determined that an individual who sold a used airplane did not qualify as a merchant under the statutory definition and that therefore implied warranties pursuant to U.C.C. § 2–314 did not arise. Defendant Ozark has not been shown by Plaintiffs to be a merchant in regard to the sale of the aircraft in question.

The facts in the instant case appear to fall within the situation contained in Comment f. which provides:

"Nor does it apply to the owner of an automobile who, on one occasion, sells it to his neighbor, or even sells it to a dealer in used cars, and this even though he is fully aware that the dealer plans to resell it. *The basis for the rule is the ancient one of the special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products* which may endanger the safety of their persons and property, and the forced reliance upon that undertaking on the part of those who purchase such goods. This basis is lacking in the case of the ordinary individual who makes the isolated sale, and he is not liable to a third person, or even to his buyer, in the absence of his negligence." (Emphasis supplied)

A discussion of when a product leaves the distribution chain is contained in *Silverhart v. Mount Zion Hospital,* 20 Cal.App.3d 1022, 98 Cal.Rptr. 187 (1971) wherein the Court stated:

"In the present case, the process of manufacturing and distribution ended with the person or firm that sold, leased or otherwise supplied the defective needle to defendant. The needle which was first placed on the market by the manufacturer left the stream of commerce when it came into defendant's possession. The needle then became a part of the surgical equipment of the hospital that was made available to surgeons for use in surgical procedures and as a part of the hospital's medical services. In sum, the hospital itself was a *user* of the needle since such needle was supplied to the hospital for its use in performing medical services incident to the normal and ordinary business of the hospital."

In the instant case, the aircraft in question left the stream of commerce when it came into the possession of Eastern Airlines (the original owner) which became the user of said aircraft in its operations as an air carrier.

A case involving a former owner of a product alleged to be defective is *Balido v. Improved Machinery, Inc.,* 29 Cal.App.3d 641, 105 Cal.Rptr. 890 (1973) in which the Court stated:

"On strict liability, there was nothing to suggest that Paper Mate was a conduit for the production or distribution of Improved's presses. Paper Mate was no more than a one-time "occasional seller" who does not become subject to strict liability for manufacturing or design defects. (*Silverhart v. Mount Zion Hospital,* 20 Cal.App.3d 1022, 1026, 98 Cal.Rptr. 187; Rest.2d Torts, § 402A comment f.)"

The product involved in said case was a plastic injection molding press which had been purchased by Paper Mate Manufacturing Company (Paper Mate) and used for approximately five years and then sold by Paper Mate to the Plaintiff's employer which owned and operated same at the time an injury was sustained by Plaintiff while using the press. Defendant Ozark in the instant case has not been shown to be involved in the distribution of Martin 404 aircraft and can be said to have been a one-time "occasional seller" which sold equipment it no longer needed in conducting its air carrier operations.

■ From the facts arising from the sale by Ozark to Fairchild which included the aircraft which crashed, it can be said that Ozark was the owner of a fleet of used

aircraft which it sold to a dealer of airplanes (Fairchild) and Ozark was probably aware that its purchaser planned to resell the aircraft. It cannot be said that Defendant Ozark by disposing of the used aircraft when it purchased new aircraft entered into the business of supplying human beings with products. The fact that Defendant Ozark in its business was required to operate aircraft should not place it in any different status than an individual who sells a used car which car may have been required by said individual in the conduct of his business. It is the finding of this Court that Defendant Ozark was not engaged in the business of selling used aircraft when it sold the Martin 404 involved in the crash of October 2, 1970 to Fairchild on or about June 7, 1967. It follows that the doctrine of strict liability as applied by the Missouri Courts does not arise from said sale and Defendant Ozark is not liable to Plaintiffs herein under said doctrine.

It is unnecessary for the Court to consider whether the strict liability doctrine would apply to the sale of a used product under Missouri law in light of the above findings. The Court notes however, that every case relied on by Plaintiffs in support of their theory that the strict liability doctrine should be applied to the sale of used products involved a sale by a dealer clearly engaged in the business of selling used products.

It must be determined if Defendant Ozark owed any duty to Plaintiffs under the asserted negligence theory. It must be remembered that Defendant Ozark as a former owner of the aircraft in question sold same more than three years prior to the crash. It is further noted that the aircraft in question was sold by Fairchild to Richards prior to the time of the crash and the sale by Defendant Ozark is not the immediate transfer of the aircraft occurring prior to the crash. In *American Law of Products Liability* 2d, Hursh & Bailey, § 2:2 the textwriter states:

"Actionable negligence, or negligence in the legal sense, has been defined as a violation of the duty to use care with respect to a person to whom a duty of care is owed."

The cases relied upon by Plaintiffs in support of their proposition that the seller of a used product may be subjected to liability under a theory of negligence for failure to use ordinary care to test for and discover defects appear to involve actions against dealers in used cars. Included in such cases are: *Hembree v. Southard*, 339 P.2d 771 (Okl.1959); *Standard Oil Co. of Indiana v. Leaverton*, 239 Mo.App. 284, 192 S.W.2d 681 (1946); and *Gaidry Motors, Inc. v. Brannon*, 268 S.W.2d 627 (Ky.1954). The *Hembree* and *Standard Oil* cases both involved accidents occurring while the respective used car dealers still owned said cars and while they were being driven by prospective purchasers. They are not applicable herein. The *Gaidry Motors* case was noted by the Court in *Midwestern V.W. Corporation v. Ringley*, 503 S.W.2d 745 (Ky. 1973) to involve an accident occurring when the purchaser of a used car drove only fourteen blocks from the used car lot. The Court stated in distinguishing the *Midwestern V.W.* case from *Gaidry* as follows:

We feel that the brief interval of time between the purchase of the used car and the accident and the absence of any other explanation for the mechanical failure are the distinguishing factors between Gaidry and the instant case."

Plaintiffs cite the annotation at 6 A.L.R.3d 12, § 10 as supporting their contention that the sellers of used products have a duty to test or inspect said product for defects. The annotation writer states in the cited section at page 46 as follows:

"A duty to inspect a motor vehicle was imposed on a used-car dealer in *Thrash v. U–Drive–It Co.* (1953) 158 Ohio St. 465, 49 Ohio Ops. 402, 110 N.E.2d 419, but the court held that the former owner of the vehicle had no liability."

*Lindberg v. Coutches*, 167 Cal.App.2d Supp. 828, 334 P.2d 701 (1959) cited by Plaintiffs as involving the sale of a used airplane was an action against a dealer in used airplanes

844

and was an action for breach of warranty arising from the sale brought by the purchaser of the aircraft. None of the cases cited by Plaintiffs support the position it asserts herein that a mere former owner of a product should be held liable for alleged defects in the product under a negligence theory.

The case of *Thrash v. U–Drive–It Co.*, 158 Ohio St. 465, 110 N.E.2d 419 (1953) evolves from facts quite similar to those present in the case at bar in that U–Drive–It Co., which was the former owner of the truck alleged by Plaintiff to be defective, had used said truck in its business of renting motor vehicles to the public. The Court's conclusion was stated as follows:

> "We conclude that where the owner of a used motor vehicle sells the same 'as is' to a dealer in those articles for such disposition as the dealer may make for it, such owner may not ordinarily be held liable for injuries occasioned to one who purchased the vehicle from the dealer or for injuries to another, because of faults or imperfections in the vehicle which existed or occurred during the time it was in the possession of such owner."

The instant case discloses that the aircraft in question was sold by Defendant Ozark to Fairchild in an "as is" condition.

The case of *Ikerd v. Lapworth*, 435 F.2d 197 (Seventh Cir. 1970) also involved a products liability action in which an attempt was made to hold a former owner of an automobile liable for alleged defects therein. The former owner was Terre Haute Chrysler-Plymouth, Inc. (Chrysler) which had obtained the automobile in question as a trade-in from a customer and Chrysler thereafter "wholesaled" it to Lapworth, a used car dealer. The Court in discussing the claim against Chrysler stated:

> "However, we are of the view that plaintiffs have posited error in the award of summary judgment in favor of Chrysler on an untenable premise—the existence of a legal duty in Chrysler in connection with the sale of trade-ins to a used-car dealer which the undisputed facts and circumstances here involved do not support. We perceive no inherent principle of justice which visits upon Chrysler the liability here asserted and based on a defective condition in a used-car it sold to a used-car dealer in the manner here detailed. Plaintiffs refer us to no legal authority, or decision of an Indiana or other court, which recognizes or supports the existence of the duty plaintiffs claim Chrysler owed to a subsequent purchaser or third-party who might sustain injury because of a defect in the trade-in Chrysler sold to its vendee, a used-car dealer."

The Court in *Ikerd*, supra, discussed *Thrash v. U–Drive–It Co.*, supra, and the intermediate Court opinion of the same case found at 93 Ohio App. 388, 113 N.E.2d 650 (1951) in great detail. In comparing the *Thrash* cases to the case before it, the Court stated:

> "We are not persuaded by plaintiffs' attempt to distinguish *Thrash* on the basis that U–Drive–It, unlike Chrysler, was not in the business of selling automobiles, and that in *Thrash* liability was grounded on negligence. The disposition of its old vehicles was as much an incident of U–Drive–It's business as the disposition of trade-ins is to Chrysler's, and any liability in the premises arises only if Chrysler breached some duty it owed the plaintiffs.

> "We conclude, on the facts and circumstances here presented, that the intervention of used-car dealer Lapworth served to relieve Chrysler of the duties plaintiffs claim were owed to them."

■ In the instant case, Defendant Ozark is in the position of the party who traded in the used car to Chrysler in the *Ikerd* case and thus is even further removed in the chain of ownership than the parties found, in both the *Ikerd* and *Thrash* cases, not to owe any duty towards Plaintiffs. The Plaintiffs herein have failed to disclose one case nor has the Court been able to find any authority holding that a mere remote former owner of a product purportedly causing injury can be subjected to liability

for alleged negligence causing injury to subsequent users of said product. The Court finds that Defendant Ozark has no legal duty to Plaintiffs in connection with the sale of the Martin 404 aircraft to Fairchild under the circumstances of the instant case and thus Defendant Ozark may not be held liable for the defects alleged to have existed in the aircraft at the time of the sale.

The crashworthiness doctrine is a particular application of the general legal principles governing negligence, breach of warranty, or strict tort liability, depending on which theory of liability is asserted. 42 A.L.R.3d 560, § 2. As it has been determined that Plaintiffs cannot assert liability against Defendant Ozark under any of said theories, it is unnecessary for the Court to determine if the crashworthy doctrine would be applied against Defendant Ozark in the circumstances of the instant case.

Defendant Ozark subsequent to the filing of the instant Motion for Summary Judgment filed a Motion to Strike portions of Complaint, or Alternatively to Compel Responsive Answers to Interrogatories. Said Motion is at issue, but in light of the Court having found that Plaintiffs are not entitled to recover against Defendant Ozark under the issues presented in the instant Motion for Summary Judgment, said Motion is stricken as moot.

Defendant Ozark's Motion for Summary Judgment is sustained and Plaintiffs' action against said Defendant is dismissed.