GRIFFITH, EXECUTOR, ET AL. *v.* THRALL, ADMINISTRATOR, ET AL.

[No. 15,896. Filed October 15, 1940. Rehearing denied March 3, 1941. Transfer denied April 21, 1941.]

142

144

*Harold J. Titsworth, John H. Kiplinger,* and *Jean Kiplinger,* all of Rushville, for appellants.

*Chancey W. Duncan,* of Rushville, for appellees.

DeVoss, J.—Appellees' decedent, Charles B. Land, filed his complaint to contest the will of Caroline Land and to set aside the probate thereof, naming as defendants therein Elmer Griffith as executor of the last will and testament of Caroline Land, deceased, Elmer Griffith in his individual capacity, St. Paul's Methodist Episcopal Church of Rushville, Indiana, and the individual trustees of said St. Paul's Methodist Episcopal Church of Rushville, Indiana. Elmer Griffith, in his individual capacity and as executor of the estate of Caroline Land, prosecutes this appeal.

Subsequent to the return of the verdict in the cause and before judgment was entered, Charles B. Land, the original plaintiff, died and his administrator and heirs were substituted as party plaintiffs, and all are named as appellees herein.

The complaint was in one paragraph, and among other things alleged: (1) That at the date of the execution of said pretended will, said Caroline Land was of unsound mind and incapable of making a will; (2) that said pretended will was unduly executed; (3) that the alleged execution of said pretended will was procured by undue influence; (4) that said pretended will was executed under duress. Separate and several answers in general denial were filed to the complaint by St. Paul's Methodist Episcopal Church, and

the trustees thereof, Elmer Griffith, in his individual capacity and as executor of the will. Trial was had by a jury, and, upon motion of appellant, all of the issues in the cause were disposed of by instructions of the court, except those of unsoundness of mind of testatrix at the time of the execution of the will. The jury returned a verdict for appellees as follows: "We, the jury, find for the plaintiff herein and that at the time of the execution of the pretended last will and testament described in the original complaint herein, the decedent, Caroline Land, was a person of unsound mind and for that reason such instrument is not in truth and in fact the last will and testament of said decedent." The court rendered judgment on the verdict in conformity therewith, holding said will invalid and setting aside the probate.

Appellant Elmer Griffith in his individual capacity together with all others named as defendants in the complaint, filed their separate and several motion for a new trial, which was overruled, and this appeal followed.

The error assigned is the ruling of the trial court on the motion for a new trial.

The grounds in the motion for a new trial, which are presented by appellant, are that the verdict of the jury is not sustained by sufficient evidence; the verdict of the jury is contrary to law; that the court erred in giving to the jury instructions Nos. 7, 13, 21, 24, 32, 33, and 38 upon its own motion; and erred in the admission of certain evidence set out in said motion.

Appellees contend that the bill of exceptions containing the evidence is not shown to have been filed in the trial court, and that, therefore, no questions depending upon the evidence or instructions can be considered on appeal.

Without discussion it appears from the record and the clerk's certificate that the bill of exceptions was properly signed and filed.

It is insisted by appellant that there is no evidence from which the jury could find that at the time the will was made, testatrix was of unsound mind. It appears from the evidence that the will in question was executed on the 19th day of September, 1935, and that testatrix died two days later, September 21, 1935. At the age of fifty-three, testatrix had married a man sixty-seven years old, this being the first marriage of the testatrix. Appellant, Elmer Griffith, and testatrix, Caroline Land, were brother and sister and the only children of their parents. It further appears that on November 2, 1931, testatrix executed a former will wherein she gave her husband one third of her estate after payment of debts and funeral expenses and a bequest of $300 for a monument.

Many witnesses who were acquainted with Caroline Land for a number of years testified as to her condition over a long period of time, and gave it as their opinion that, at the time they saw her in the years 1934, and 1935, which included times prior and subsequent to the making of the will, she was a person of unsound mind. Conversations were detailed as having been had with testratrix and statements made by the witness, that her talk was incoherent and disconnected, that she laughed at things which did not appear amusing to the witnesses, that on one occasion she failed to recognize her neighbor and daughter who called on her, and became alarmed by their presence, and many other instances and conversations which are unnecessary to repeat herein.

While it is true, that no evidence or opinion was given as to her unsoundness of mind at the exact time

of the execution of the will, yet the conduct and conversation of ·Caroline Land both before and after the execution of the will are a sufficient basis for inferring her mentality at the time of executing the will. *Pence* v. *Waugh* (1893), 135 Ind. 143, 34 N. E. 860.

In the case of *Stalker* v. *Breeze* (1916), 186 Ind. 221, 114 N. E. 968, the Supreme Court of Indiana said, "Without setting out the evidence herein, which is voluminous, it is sufficient to say that in our opinion, there was at least sufficient evidence introduced in the case to form an issue of fact as to testator's testamentary capacity and that issue having been submitted to the jury, which found against the validity of the will, this court could not, if it so desired, invade the province of the jury and weigh the evidence."

There is some evidence to sustain the verdict, and this court cannot disturb it on the grounds of the insufficiency thereof.

Objection is made by appellant to a question propounded to a witness as to what work the witness saw testatrix's husband do around the premises at the time they were with each other and at their home. We think this evidence was proper. The individual inquired about was the husband of the testatrix, and the evidence elicited by the question tended to throw some light on the subject involved, as to whether the will was natural or unnatural, and as to whether appellee, who had been entirely eliminated by the will from participating in the property of testatrix, merited such treatment. In the case of *Burkhart et al.* v. *Gladash et al.* (1889), 123 Ind. 337, the Supreme Court of Indiana states, "We do not think the court erred in permitting the parties and other witnesses to testify as to the kind and quality of work and labor

performed by the appellees for the testator during the time they lived at home, and their conduct towards him."

It is further contended that the question propounded to a witness, as to whether or not any ill will appeared between the testatrix and her husband, was not a proper question and the answers thereto should have been excluded. We think this was properly admitted as tending to show the conduct of testatrix towards her husband and the relations existing between them. It elicits information relative to the appearance of the testatrix and her actions during the time involved herein.

Appellant contends that the question propounded to a witness, as to whether testatrix in the spring of 1935, when witness last saw her, appeared to be a person easily impressed or influenced, was improper and that answer was erroneously permitted to be made thereto. The witness, Grace Dishinger, to whom this question was propounded, had known the testatrix for quite a few years, and in the year 1934, was in her home for two weeks cleaning house and at other times, and testatrix was in the home of the witness a number of times. The witness was in a position to observe testatrix under many circumstances and testatrix's appearance was a proper subject of inquiry. The witness gave it as her opinion, based on the facts observed and circumstances related by her, that in the year 1934, at the time she saw her, the testatrix was of unsound mind. In the case of *In re Sparks' Estate* (1917), 198 Mich. 421, 164 N. W. 267, the Court held the following question and answer to be proper: "Q. Now would you judge him to be a man who could be influenced in any business transaction against his will? A. I should say no and . . . ."

The rule in Indiana as to this class of evidence is stated in the case of *Gwinn* v. *Hobbs* (1925), 83 Ind. App. 263, 141 N. E. 812, 144 N. E. 648. See also *Mills* v. *Winter* (1884), 94 Ind. 329.

Further objection is made as to questions propounded to witnesses as to whether or not the things witnesses heard testatrix say were sensible, whether or not she appeared to be sensible, whether or not she appeared to be abnormal, and to the answers to questions as follows: "A. Well, she was sick and her mind was gone," and "A. She talked vulgar." The questions objected to and the answers given relate to facts, circumstances, and observations made by the witnesses upon which they based their ultimate opinion as to the soundness or unsoundness of mind of testatrix and are proper. The witnesses were subject to cross-examination for the purpose of bringing out fuller details of the facts and circumstances testified to by them if appellant so desired.

The following question was propounded to Dale Fisher by appellee on direct examination: "Q. What was the time Mr. Russel Titsworth and Mr. Elmer Griffith came to your office with the purported will of Caroline Land?" The witness was the clerk of Rush Circuit Court and the order book entry of said court was introduced in evidence showing the time of the probate of the will. Objection is made that the question and answer is calculated to prejudice the jury, by showing that the will was probated shortly after testatrix's death. We do not deem the question and answer open to that objection as it is merely cumulative and supplements the record entry introduced, with the addition that Elmer Griffith came to the clerk's office.

Objection is made to a question propounded by appellee to the witness John Stech requesting him to state what time in his opinion testatrix was of unsound mind as to handling property matters. This witness testified on direct examination that testatrix was of unsound mind at the times he saw her in 1935. On cross-examination he testified that she took good care of her property and as far as her property was concerned she was sane. On redirect examination said witness further testified that testatrix was sane on money matters up to the time she fell and was taken to the hospital in the latter part of August or first of September, 1935. The following question was then propounded to the witness by appellee on redirect examination: "Q. Upon your cross-examination, Mr. Stech, reference was made to the unsoundness of mind of Mrs. Caroline Land with reference to property matters, also in connection with money matters. State what time, in your opinion, she was of unsound mind as to handling property matters." Appellant objected to this question, "for the reason that it is identically the same question." The objection was overruled and appellant insists this ruling by the trial court was error. This witness was cross-examined by appellant five times. Much information relative to his original answers as to testatrix's sanity was elicited and, in view of the broad scope of that cross-examination, we think this question was proper to explain his former statements. We might add further that the objection to the question was not specific and was too indefinite to enlighten the court as to any grounds thereof.

A further question was propounded to this witness as to whether Caroline Land was a person of sound or unsound mind on the day or at the time she married Charles B. Land, appellee's decedent herein. The time fixed in the question is some-

what remote from the day of the execution of the will, but the extent of time covered in the investigation was a matter within the sound discretion of the court and was a matter of weight which should be accorded the evidence more than a question of admissibility. We find no error in the ruling of the court on this question.

Appellant in his brief further argues that if the testatrix was of unsound mind at the time she entered into a ceremonial marriage with the plaintiff and did not thereafter become sane and enter into and maintain a common-law marriage while she was of sound mind, the plaintiff was not the testatrix's husband or heir and could not maintain this action. No issue was raised in the trial of this action as to that question, and if the plaintiff is not the real party in interest and has no right to sue, that defense must be specially pleaded. Watson's Works' Practice, Volume 1, § 603.

Sylvia Aldridge was asked the following question by appellee and made answer thereto viz: "Q. Now, Mrs. Aldridge, basing your opinion on the facts, observations and conversations you testified to concerning Caroline Land, you may state whether she was a person of sound or unsound mind on the occasions you have stated you saw her during the last eighteen months of her lifetime. A. I would have to say she was of unsound mind." Prior to the propounding of the above question to the witness, said witness had testified in part as follows: "Q. During the last eighteen months did you see her in your home. A. Yes, in 1934. Q. During the last eighteen months of the life of Mrs. Land, about how often did you see her and where? A. Well, she came to my house once or twice a week, sometimes not quite so often."

On cross-examination said witness testified further as follows: "Q. The last eighteen months, I believe, you say you were never at her home? A. No. Q. She was never at your home? A. No. Q. It was all eighteen months prior to her death. None of these matters were in the eighteen months prior to the time of her death? A. No. I haven't seen her in eighteen months."

Appellant moved the court to strike out the answer relative to her mental condition during the last eighteen months of her lifetime for the reason witness did not see or talk to testatrix during a period of eighteen months prior to her death, which motion was overruled by the court.

After the motion as herein above stated, appellant further cross-examined said witness as follows: "Q. So that when she talked to you on the subject of sex matters that was some time in the early part of 1934? A. June or July."

While it is true that the witness did testify she had not seen testatrix or talked to her within eighteen months of testatrix's death, yet the further cross-examination by appellant elicited the information that she had seen and talked to testrix in June or July, 1934. As a matter of calculation, the time fixed by the witness would be within eighteen months of the time of death of testatrix and this evidence was properly allowed to remain in the record for consideration by the jury and to be given such weight as in their opinion it merited.

The witness, Charles Wells, was called by appellant and testified in response to a question that, basing his opinion upon the facts and circumstances related, testatrix was a person of sound mind at the times he saw her. On cross-examination by appellee, the following

questions were propounded: "Q. She went to the other neighbors' the same way? A. I don't know. Q. She went from door to door? A. I don't know. Q. You heard the neighbors discussing it didn't you? A. I don't know. Q. And they did say, 'Poor Carrie'?" Appellant objected to the last question propounded for the reason that the statement called for hearsay and was not cross-examination.

Hearsay evidence has been defined as the testimony of a witness relative to the declaration of another for the purpose of proving the facts asserted by the declarant. This definition, of course, applies to oral evidence. Without question, the evidence admitted is hearsay, but we are not able to say that the testimony was of such a nature that it was prejudicial to the interest of the appellant or caused the jury to doubt the testatrix's mentality. Witness testified that he did not know that testatrix went from door to door in the neighborhood, that he did not know that the neighbors discussed it. Then the question, "And they did say, 'Poor Carrie,' " to which the witness answered, "I have heard some of them say 'Poor Carrie,' yes." So far as the evidence is concerned, the exclamation may have arisen out of sympathy on the part of the declarants for the testatrix by reason of her physical suffering, or by reason of her domestic unhappiness, or by reason of the fact that she was compelled to or did work hard. The expression, "Poor Carrie," is not a statement of any fact and could not be considered by the jury as proof of any fact. The evidence was immaterial, but we do not deem it sufficiently prejudicial to the rights of the appellant to warrant a reversal herein.

R. O. Kennedy, a physician, was called as a witness for appellant in the trial of this cause and testified,

that from observations and examination, in his opinion testatrix was a person of sound mind during the times detailed. Questions were propounded to witness by appellant relative to prognosis and observations generally. On cross-examination by appellees, the following was asked: "Q. I just wanted to know if the line between sanity and insanity isn't a pretty narrow one in the medical profession?" The defendant objected to this question for the reason that the law prescribed the line between sanity and insanity in will cases. We think this was a proper subject of examination. The witness had acquired some knowledge of the testatrix through his treatment of her as a physician, and from that knowledge together from observation testified as to her mental condition. The jury had a right to be informed as to his perspectives and ideas about conditions generally, and we find no error in the admission of the testimony objected to.

The witness, Wilbur Stiers, was called on behalf of appellant and testified that he was familiar with the signature of Caroline Land and Elmer Griffith, and that one of the signatures appearing in defendants exhibit No. 2 was the signature of Caroline Land. On cross-examination, said witness was asked the following question: "Q. Now calling your attention to her nervousness, would you say there was any difference in her nervousness between those periods of time when defendant's exhibit No. 3 was executed and when defendants' exhibit No. 2 was executed?" We think this was a proper matter of inquiry inasmuch as the witness had testified that he was familiar with the signature of Caroline Land and testified as to her physical and mental condition, and appellant had the right, without question, to disclose to the jury

the condition of testatrix as to nervousness at any of the times mentioned by the witness.

Stanton McBride, a physician, called by the appellant, testified on direct examination in response to a hypothetical question that in his opinion the subject of the inquiry was of sound mind. The witness also testified relative to diagnosis and symptoms of tuberculosis meningitis and gave other expert testimony.

On cross-examination the witness was asked a hypothetical question, relative to delusions entering testatrix's mind in making the will. Objection was made for the reason that it was not cross-examination, and an invasion of the province of the jury, and asks for a legal conclusion.

The question is not subject to such infirmities. In view of the scope of the examination in chief, the question was proper.

Error is predicated by appellant upon the giving of instruction No. 7 by the court of its own motion. In that instruction the court defines the meaning of burden of proof. Appellant objects for the reason that the instruction does not define the obligation which must be met by the plaintiff before recovery could be had.

It has been determined by this court numerous times that the giving or refusing to give an instruction not mandatory in form is not prejudicial, where the given instructions as a whole state the law fairly and properly instructs the jury. *Prudential Insurance Co.* v. *Martin* (1936), 101 Ind. App. 320, 196 N. E. 125.

When instruction No. 7 is considered in connection with the other instructions, we find no error therein.

By its instruction No. 13, given on its own motion by the court, the jury was instructed as to what con-

stituted unsoundness of mind sufficient to vitiate a will, and when unsoundness of mind of a permanent character had once been established by the evidence, the presumption exists that it continues until the contrary is shown. Appellant insists that the instruction, as to the presumption of the continuation of unsoundness of mind of a permanent character, is erroneous for the reason that no medical or expert evidence was offered to show whether the mental disease of the testatrix was of a permanent or temporary nature.

While it is true that no such expert evidence was introduced showing or tending to show a permanency of the condition of testatrix's mind, yet a number of witnesses testified that they had known testatrix over a long period of years, some of them stating that she had been of unsound mind from the time they first knew her until her death. Under the circumstances, we think the question, as to whether or not unsoundness of mind of a permanent character was established, was a matter for the jury to determine, and there was no error in the giving of this instruction.

Instruction No. 24, given by the court of its own motion, is objected to by appellant, and the part objected to is substantially the same as contained in instruction No. 13, relative to the unsoundness of mind of a permanent character being once established presumption is that the state of unsoundness exists until the contrary is shown. In disposing of the objection to instruction No. 13, this question was also disposed of.

Instruction No. 32, given by the court of its own motion, instructed the jury that if it found from the evidence that Caroline Land, prior to the execution of her alleged will, made statements as to the manner in which she intended to dis-

pose of her property, that fact might be considered with all the other evidence upon the mental capacity of said Caroline Land at the time she executed the instrument in question, if you find from a preponderance of all the evidence that she did execute the same. Appellant objected to the last clause for the reason that it casts doubt upon the execution of the instrument in question.

We do not believe this instruction is subject to the interpretation so given by appellant and, in light of the other instruction given, could not be misleading.

Instruction No. 33, given by the Court on its own motion, informed the jury that it had a right to consider the age of the testatrix, her physical condition with reference to sickness, strength, or weakness of her physical condition, and any and all matter which may have affected the condition of her mind at the time of her execution of such will. The appellant objected to this instruction for the reason that it indicated to the jury that testatrix' sickness was a matter affecting her mental condition. The instruction is not subject to such infirmity and does not undertake to state specifically all of the facts which may be considered. This instruction when considered with the other instructions given is proper.

By instruction No. 21, given by the court on its own motion, the court instructed the jury that the law takes cognizance of such delusions only as point to actual unsoundness of mind or insane delusions, and by said instruction the court further defined an insane delusion. Appellants objected to this instruction for the reason that no evidence was introduced at the trial which tended to show that the testatrix had any delusions of any kind and the instruction was therefore inapplicable. The evidence disclosed that testatrix

had made certain statements relative to treatment by her husband. Further evidence was introduced tending to show the falsity of these statements. However slight the evidence may have been, relative to delusions, this court cannot say that there was no evidence relative thereto, and the question as to whether or not any delusions on the part of the testatrix were proven was a question for the jury, and such instruction was proper.

By instruction No. 38, given by the court on its own motion, and objected to by appellant, the court instructed the jury relative to the weight to be given answers to hypothetical questions propounded to physicians. The court further instructed the jury in said instruction, "You are not bound or concluded by the opinions so expressed. The weight to be given those opinions depends upon the intelligence, capacity and skill of such physicians . . . . You may also consider whether the hypothetical case put in the question is a fair and true life history of the decedent. You are not to assume that the facts stated in the hypothetical question are true because so stated. You are not to take them as true unless they have been established by a preponderance of the evidence. You should give such value to the answers of these physicians as you find just by the evidence."

Appellant insists, that by this instruction, the jury was informed that it should not accept as true any of the facts embraced in the defendant's theory of the evidence unless those facts had been established by a preponderance of the evidence, and that thereby the jury was instructed that the defendants were obliged to establish, by a preponderance of all the evidence, the

facts which they relied upon as showing the soundness of mind of the testatrix.

We do not follow appellant in this contention. A hypothetical question to be of any assistance to a jury in the trial of a cause certainly must be, in the final analysis, based upon facts proved therein. An opinion given by an expert in answers to a hypothetical question based upon facts which did not exist, could not be proof of any question. In the case of *Public Utilities Co.* v. *Handorf* (1916), 185 Ind. 254, 263, 112 N. E. 775, the following statement is made, "The opinion of an expert, when sought on a hypothetical question, should be based on facts which the evidence in the case tends to prove (citing cases). When there is evidence tending to prove a certain fact or facts either by direct proof or by logical inference, a matter which is in the discretion and sound judgment of the trial court, the court may permit the expert witness to give an opinion of the state of facts as shown by the evidence introduced. It is for the jury to determine finally whether the facts as stated in the hypothetical question have been established by a fair preponderance of the evidence in determining what weight will be given to the testimony of such expert witness." We think the instruction is a proper statement of the law and is in accord with the above decision.

We think the case was fairly tried and without expressing any opinion as to the weight of the evidence, we find no reversible error.

Judgment affirmed.

NOTE.—Reported in 29 N. E. (2d) 345.