435 F.2d 197
 Joyce IKERD, Plaintiff-Appellant,
v.
Susan LAPWORTH, d/b/a Cars, Terre Haute Chrysler-Plymouth,
Inc., Defendants-Appellees.
Robert KNOBLETT, Plaintiff-Appellant,
v.
Susan LAPWORTH, d/b/a Cars, Terre Haute Chrysler-Plymouth,
Inc., Defendants-Appellees.
 Nos. 17906, 17907.
 United States Court of Appeals, Seventh Circuit.
 Dec. 4, 1970.
 
 Gerald H. McGlone, Woodrow S. Nasser, Terre Haute, Ind., for plaintiffs-appellants.
 Jerdie D. Lewis, David E. Rosenfeld, Eric A. Frey, Rosenfeld & Wolfe, Terre Haute, Ind., for defendant-appellee, Terre Haute Chrysler-Plymouth, Inc.
 Before MAJOR and CASTLE, Senior Circuit Judges, and FAIRCHILD, Circuit judge.
 CASTLE, Senior Circuit Judge.
 
 
 1
 Plaintiff-appellant Joyce Ikerd brought suit in the District Court[1] against the defendants-appellees Susan Lapworth, d/b/a Cars, and Terre Haute Chrysler-Plymouth, Inc.,[2] seeking to recover damages for personal injuries she sustained when a 1960 Pontiac station-wagon automobile in which she was a passenger collided with a traffic signal in the divider strip at the south side of the intersection of U.S. Highway No. 41 and Walnut St. in Terre Haute, Indiana. The complaint alleges that as Robert Knoblett, the driver of the Pontiac, accelerated to pass another car the accelerator stuck, thus causing the automobile to proceed down the highway at a high rate of speed, go out of control, and strike the traffic signal. It is alleged that the accelerator was defective in that it had a tendency to stick in the open position, and right-of-recovery is predicated on the basis of implied warranty by, the negligence of, and strict product liability in the defendants.
 
 
 2
 Subsequent to the filing of the Ikerd action plaintiff-appellant Robert Knoblett brought a like suit, similarly based and grounded, against the defendants-appellees for injuries he sustained in the collision.
 
 
 3
 The Pontiac had been purchased by Knoblett on February 11, 1967 from Lapworth, a Clinton, Indiana, used-car dealer. It was a used-car which Chrysler, a Terre Haute, Indiana, automobile dealer, had acquired in October 1966 as a trade-in on the sale of a new car, and on December 8, 1966 had wholesaled to Lapworth along with five other usedcars. The collision occurred on March 7, 1967.
 
 
 4
 The answer filed by Chrysler in each of the actions included, inter alia, a defense based on the proposition that as a remote vendor who had sold the used-car to Lapworth, a used-car dealer, it was as a matter of law not liable to either plaintiff.
 
 
 5
 Chrysler filed a motion for summary judgment in each of the actions based on the pleadings (the respective complaint and the answer thereto), depositions on file (which included the depositions of Thomas E. Lapworth, manager of Lapworth; John A. Lowry, an employee of Lapworth; Robert E. McClelland, president of Chrysler; and John E. Fields, used-car manager for Chrysler), and an affidavit made by one of the counsel for Chrysler. Neither plaintiff filed any opposing affidavit. Objections to the entry of summary judgment were made on the basis that the pleadings, depositions, and answers to interrogatories on file in the case disclosed the existence of genuine material issues of fact requiring a trial. The District Court granted the motions for summary judgment in favor of Chrysler.
 
 
 6
 The two actions against the remaining defendant, Lapworth, were consolidated for trial. Lapworth's answer to Knoblett's complaint alleged contributory negligence by Knoblett in driving at excessive speed and while under the influence of intoxicating beverages, in failing to apply the brakes, and in failing to keep a lookout; and assumption of risk by Knoblett in driving at excessive speed while under the influence of intoxicating beverages with knowledge that the accelerator had a tendency to stick. Lapworth's answer to Ikerd's complaint included issues and affirmatives defenses based on allegations that prior to the collision Ikerd and Knoblett were engaged in drinking intoxicating beverages together and the intoxication of Knoblett was the direct and sole proximate cause of the collision and of any injuries resulting therefrom; and that the direct and sole cause of the collision was the negligence of Knoblett in driving at a high and dangerous rate of speed of approximately eighty miles per hour. The jury returned a verdict for Lapworth in each case and judgments were entered accordingly. Plaintiffs appealed and the appeals were consolidated.
 
 
 7
 Plaintiffs contend that the District Court erred in granting the motions of Chrysler for summary judgment. From the arguments advanced by plaintiffs in support of this contention it appears that it is predicated on the assumption that as a matter of law Chrysler was under a duty to inspect the traded-in Pontiac prior to selling it to Lapworth and to either remedy or give warning of any defective condition it found to exist (or reasonably should have found by a proper inspection) which might make operation of the automobile dangerous, such as a tendency in the accelerator to stick or a likelihood thereof due to worn or bent linkage, dirt in the mechanism, broken motor support, etc.
 
 
 8
 The pleadings, as supplemented by the depositions and affidavit relied upon in support of the motions for summary judgment, establish that Chrysler did not repair or recondition trade-ins it wholesaled to other dealers; that it did not inspect or make any repairs on the Pontiac prior to its sale to Lapworth, and that Chrysler expressly negated the giving of any warranty by it with respect to the automobile; that Lapworth's manager inspected the Pontiac and other used-cars it bought from Chrysler prior to making the purchase; and that Lapworth reconditioned the used-cars it purchased from Chrysler, if necessary, and took full responsibility for them. But the material which was before the court for consideration on the motions for summary judgment did not resolve in Chrysler's favor the question whether the defect complained of-- a tendency in the accelerator to stick in the open position-- existed at the time of the sale of the Pontiac to Lapworth, whether such a defect was a proximate cause of the collision, or several other subsidiary factual issues which would be material, and thus preclude the entry of summary judgment, if plaintiffs were correct in their assumption as to the controlling principle of law involved.
 
 
 9
 However, we are of the view that plaintiffs have posited error in the award of summary judgment in favor of Chrysler on an untenable premise-- the existence of a legal duty in Chrysler in connection with the sale of trade-ins to a used-car dealer which the undisputed facts and circumstances here involved do not support. We perceive no inherent principle of justice which visits upon Chrysler the liability here asserted and based on a defective condition in a used-car it sold to a used-car dealer in the manner here detailed. Plaintiffs refer us to no legal authority, or decision of an Indiana or other court, which recognizes or supports the existence of the duty plaintiffs claim Chrysler owed to a subsequent purchaser or third-party who might sustain injury because of a defect in the trade-in Chrysler sold to its vendee, a used-car dealer.
 
 
 10
 Plaintiffs cite numerous cases in which automobile manufacturers and dealers have been held liable for injuries resulting from the sale of an automobile in a defective condition to a consumer-customer. They conclude from these cases that the seller of a used-car is negligent, or accountable under the doctrine of strict product liability, if he sells the used-car in a defective condition to one who he should know will use or resell it without first remedying the defect. But plaintiffs concede that none of the cases they rely on involved a sale of a used-car from one dealer to another. Moreover, none of them involved such a sale under circumstances where, as here, warranty was negated, the used-car dealer purchaser inspected the car prior to purchase, and the seller was justified in relying upon the dealer-purchaser to make any necessary repairs on the car prior to its sale to a consumer-user.
 
 
 11
 And, plaintiffs' reliance upon Restatement (2nd) Torts, 402a is misplaced in that plaintiffs ignore that where a remote seller is sought to be held liable for a defect which results in injury to an ultimate consumer or third-party the question is essentially one of whether the responsibility for discovery and prevention of the dangerous defect has been shifted to an intermediate party who is justifiably relied upon to inspect the product and remedy any dangerous defect.
 
 
 12
 The following observations made by the Ohio courts in Thrash v. U-Drive-It Co., 158 Ohio St. 465, 110 N.E.2d 419 and 93 Ohio App. 388, 113 N.E.2d 650, in connection with an analogous factual situation are pertinent here. In that case the plaintiff sued U-Drive-It Co. and Spot Motor Company. The former was engaged in the business of renting motor vehicles for hire to the public and the latter in buying and selling used automobiles and trucks. The complaint alleged that U-Drive-It traded a used truck to Spot; that the left front wheel was defective due to a mismatch of the lock ring with the rim; that Spot sold the truck to plaintiff's father on the representation that it was in good operating condition; that plaintiff was injured when the defect caused the lock ring to come off, releasing the tire with the result that the truck became unmanageable, left the road and rolled down an embankment. The Ohio Court of Appeals sustained the lower court's dismissal of the complaint as to U-Drive-It (113 N.E.2d 650) and stated (pp. 655-656):
 
 
 13
 'The defendant U-Drive-It Company was charged with creating the dangerous condition, and with negligence in 'placing upon the market for eventual sale to the public a motor truck containing a latent and inherently dangerous defect, which would be hazardous to the life and limb of anyone in the vicinity of the truck, while it was being operated on the highway,' in failing to warn its vendee, the Spot Motor Company, of the condition of the truck, as well as its failure to notify the purchaser, Thrash, although it knew of the sale to Thrash, and knew that said truck would be used for the purpose for which it was designed.
 
 
 14
 * * * The U-Drive-It Company had the right to suppose that its vendee, the Spot Motor Company, engaged in the business or trade of buying and selling used cars, would, in the absence of representation or warranty that the car was in good and safe condition, fulfill its duty to examine and repair an old and dangerous vehicle before selling it for use on the highways without making disclosure to its vendee of the vehicle's dangerous condition. And, especially, did the U-Drive-It Company have the right to suppose that its vendee would not misrepresent the dangerous car to a purchaser, while knowing that the vehicle was to be put to use on the highways.
 
 
 15
 On the theory that foresight of the consequences measures the creation of the duty and consequent liability, injury to third persons was not here to be reasonably foreseen as the result of the sale to the Spot Motor Company, in the absence of false representations.
 
 
 16
 In deciding this phase of the case, we must appraise and measure the interests, the experience and the business or economic sense of a community. Every one knows that it is common practice for owners of used cars to sell them or trade them in on other cars to secondhand dealers. The amount of money received from the sale or the amount of credit given on the purchase of another, is generally dependent on the make, age and condition of the vehicle. The used car dealer has general knowledge of the various degrees of imperfection in old and worn cars, and has the technical knowledge to ascertain defects and weaknesses, and he buys them on that basis. They are not sold with the knowledge or expectation that they will be resold to third persons without examination or tests. They are sold to a person or company engaged in and practicing a trade or business, and the rule is general that there need be no warning to one in a particular trade or business against a danger generally known to that trade or business. Rosebrock v. General Electric Co., 236 N.Y. 227, 140 N.E. 571.'
 
 
 17
 In affirming the ruling of the Court of Appeals the Supreme Court of Ohio (110 N.E.2d 419, 422-423) stated:
 
 
 18
 'The seller of a used motor vehicle to a dealer occupies and should be placed in a different position, (than a manufacturer of a new car) especially where he makes no representations or warranties as to the condition of the vehicles sold and where any defects or weaknesses therein would be detectable by the dealer upon examination before resale for further use.
 
 
 19
 We conclude that where the owner of a used motor vehicle sells the same 'as is' to a dealer in those articles for such disposition as the dealer may make of it, such owner may not ordinarily be held liable for injuries to another, because of faults or imperfections in the vehicle which existed or occurred during the time it was in the possession of such owner.'
 
 
 20
 We are not persuaded by plaintiffs' attempt to distinguish Thrash on the basis that U-Drive-It, unlike Chrysler, was not in the business of selling automobiles, and that in Thrash liability was grounded on negligence. The disposition of its old vehicles was as much an incident to U-Drive-It's business as the disposition of trade-ins is to Chrysler's, and any liability in the premises arises only if Chrysler breached some duty it owed the plaintiffs.
 
 
 21
 We conclude, on the facts and circumstances here presented, that the intervention of used-car dealer Lapworth served to relieve Chrysler of the duties plaintiffs claim were owed to them.
 
 
 22
 Plaintiff-appellant Knoblett makes an additional and independent contention that as to him the granting of Chrysler's motion for summary judgment was erroneous for the reason that it was granted on May 9, 1969 in contravention of Rule 56(c) of the Federal Rules of Civil Procedure,[3] ten days not having elapsed from the filing and service of the motion on April 29, 1969. The similar motion of Chrysler for summary judgment in its favor against Ikerd was filed on December 13, 1968 and had been granted on April 9, 1969. After the filing of the motion for summary judgment in the Knoblett case it was consolidated with the Ikerd case on May 2, 1969. Insofar as the motions for summary judgment are concerned the controlling undisputed facts and the applicable law are identical. Knoblett points to nothing in the record which shows that he attempted to present any counter-affidavit or other material for the court's consideration during the ten day period or that he at any time called the court's attention to its oversight in disposing of the motion one day earlier than Rule 56(c) provides and requested that the ruling be reopened for his presentation of such materials and for argument. Knoblett makes no claim of any specific resulting prejudice, and under the circumstances we are unable to perceive how any prejudice resulted from this wholly insignificant technical oversight, much less such prejudice as would support a reversal.
 
 
 23
 In view of the foregoing we conclude that the District Court did not err in granting summary judgment in favor of Chrysler against each of the plaintiffs-appellants. We affirm those judgments.
 
 
 24
 We turn to consideration of plaintiffs' contentions that erroneous rulings of the District Court require reversal of the judgments in favor of defendant-appellee Lapworth and the granting of a new trial in each of the actions.
 
 
 25
 At the outset we point out that plaintiffs do not challenge the sufficiency of the evidence admitted at the trial to support the verdicts of the jury. Nor, on the basis of the record, could they successfully make such a contention. In this connection there was testimony from which the jury, on resolving conflicting testimony, could properly conclude that the collision was not caused by any defect in the accelerator of the Pontiac but by Knoblett's negligent operation of the automobile. What plaintiffs do contend is that erroneous rulings by the District Court including rulings admitting testimony adverse to plaintiffs and excluding testimony the plaintiffs sought to introduce, improper restriction of cross-examination, improper denial of discovery, and improper consolidation of the cases, combined to deprive the plaintiffs of a fair trial.
 
 
 26
 Without attempting to summarize all of the testimony upon which Lapworth relies as supporting the jury verdicts in its favor we point out that it included knoblett's admission that during the five or six hour period immediately prior to the collision, which occurred at about 4:30 in the morning, he visited three taverns where he consumed five or six alcoholic drinks; the testimony of Lois Hathaway, a public stenographer who took statements given by Knoblett and Ikerd when interviewed prior to their discharge from the hospital, who testified that they appeared alert and willing to talk, that Knoblett stated that he did not actually remember what happened to cause the collision, and that Ikerd stated that Knoblett was driving at a speed of from fifty to sixty miles per hour, the road was slick, and as Knoblett started to pass a car his car went out of control; and the deposition testimony of John Hardin, a truck driver, who testified that he had parked his truck on U.S. Highway 41 two blocks from the scene of the collision and was standing on the sidewalk when the Pontiac went by travelling at a speed of about eighty miles per hour, and ran the stoplight at the intersection between where Hardin was standing and the intersection where it collided with the traffic signal. Hardin stated that he saw the collision, was the first person to reach the scene after the collision, and that the interior of the Pontiac smelled of alcohol.
 
 
 27
 Because of their interrelation we elect to group the principal contentions of the plaintiffs for discussion under the respective headings which follow.
 
 CONSOLIDATION
 
 28
 Plaintiffs argue that the District Court erred in granting Lapworth's motion to consolidate the two cases. But it is apparent that the cases involve common questions of fact, and share some identical questions of law, within the meaning of the requirements for consolidation set forth in Rule 42(a) of the Federal Rules of Civil Procedure, and they were prime subjects for consolidation under the policy that considerations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event such as the collision here involved.
 
 
 29
 Knoblett contends that the consolidation required him to go to trial early and without discovery. With respect to this complaint it is sufficient to point out that Knoblett filed no objection to the consolidation.
 
 
 30
 Ikerd contends that the defenses of contributory negligence and assumption of risk asserted as to Knoblett but not as to Ikerd may have confused the jury and resulted in prejudice to Ikerd's case. But in this connection the record discloses that specific instructions were given informing the jury that contributory negligence and assumption of risk were not issues as to Ikerd, and the record further reflects that the issues and law applicable to each of the plaintiffs were clarified through carefully prepared instructions dealing separately with the different phases of the cases and covering each of the various issues, which instructions stated their applicability to Ikerd only, or to Knoblett only, as the case might be. In view of this we find no merit in Ikerd's speculation concerning possible jury confusion.
 
 
 31
 Accordingly, we are of the opinion that the considerations advanced by plaintiffs do not support a conclusion that the consolidation was erroneous.
 
 HARDIN and LOWRY DEPOSITION TESTIMONY
 
 32
 John Hardin, whose deposition testimony is referred to earlier herein, was deposed by counsel for Lapworth at Madisonville, Kentucky, on September 11, 1968. John A. Lowry, an employee of Lapworth, was deposed on June 28, 1968 at Newport, Indiana. Ikerd's counsel was present on both occasions, but Knoblett's suit was subsequently filed.
 
 
 33
 In his deposition Hardin testified that he was a resident of Madisonville, Kentucky. Lowry testified that he was a resident of Clinton, Indiana.
 
 
 34
 Both of the plaintiffs contend that the District Court erred in permitting the use of the depositions at trial over their objection that none of the conditions enumerated in Rule 26(d)(3) of the Federal Rules of Civil Procedure as authorizing such use had been shown to be satisfied. The rule authorizes the use at trial of the deposition of a witness who 'is at a greater distance than 100 miles from the place of trial * * * unless it appears that the absence of the witness was procured by the party offering the deposition'. There is no suggestion that Lapworth procured the absence of Hardin, and the court was entitled to take judicial notice of the fact that Madisonville, Kentucky, was more than 100 miles from Terre Haute, Indiana, the place of trial. The showing made by the deposition, on its face, that Hardin was a resident of Madisonville at a time only eight months previous to the trial was in the absence of a specific challenge by plaintiffs to its veracity a sufficient basis for the court to permit it to be read to the jury. Cf. Stewart v. Meyers, 7 Cir. 353 F.2d 691, 696.
 
 
 35
 The plaintiffs made a similar general objection to use of the Lowry deposition. Lowry's place of residence was Clinton, Indiana, within 100 miles from Terre Haute, but at a conference in chambers on the first day of trial Lapworth's counsel informed the court and opposing counsel that Lowry was in California and could not be present for the trial and that Lowry's father had talked with Lowry by telephone since the latter's arrival in California. Lapworth's counsel advised the court and plaintiffs' counsel that, if necessary, he would produce witnesses to establish that Lowry was outside the jurisdiction of the court. Counsel for plaintiffs stated that this would not be necessary; that they would make inquiry to verify the representation made as to Lowry's absence. On the next day, in a colloquy between the court and counsel, plaintiffs' counsel were reminded of their agreement to ascertain the fact concerning Lowry's being outside the jurisdiction of the court, and were given the name and address of Lowry's father who, it was stated, also lived in Clinton, Indiana. The court thereupon advised plaintiffs' counsel that unless they established to the contrary, Lowry's deposition would be accepted upon the representation made that he was outside the jurisdiction of the court. In view of the commitment made by counsel to make their own inquiry before requiring Lapworth to produce testimony as to Lowry's whereabouts their subsequent general objection to the use of Lowry's deposition testimony was wholly unjustified and the court did not err in permitting it to be read to the jury.
 
 
 36
 Knoblett makes an independent contention that neither of the depositions should have been permitted to be used and considered as to him for the reason that they were taken prior to the date his action was filed, March 7, 1969, and, consequently, he received no notice thereof and was denied the opportunity to have his counsel present. Although it is generally the rule that a deposition is not admissible as to one not having the opportunity to be represented at its taking, the presence of an adversary with the same motive to cross-examine the deponent and identity of issues in the case in which the deposition was taken with the one in which it is sought to be used provide a well-recognized exception to the rule. Hertz v. Graham, (S.D.N.Y.1958) 23 F.R.D. 17; Fullerform Continuous Pipe Corp. v. American Pipe & Constr. Co., (D.Ariz.1968) 44 F.R.D. 453, 455-456. In such case the purpose of Rule 26(d)-- to ensure that the deposition is taken under adversarial circumstances-- is substantially satisfied. Since counsel for Ikerd was present at the taking of both of the depositions here in question and there is substantial identity of factual and legal issues involved in the two cases we conclude that the exception to the rule is applicable.
 
 
 37
 Moreover, Ikerd's counsel, with the apparent agreement of Knoblett, took the leading role for both of the plaintiffs at the trial, assuming almost complete charge of both cases from the standpoint of the presentation of plaintiffs' evidence and the cross-examination of defendant's witnesses. We perceive no basis upon which it can be assumed that the cross-examination of the deponents would have been any different had Knoblett's counsel had the opportunity to participate therein. Nor do the circumstances indicate that Knoblett suffered any prejudice due to the fact that he had no opportunity to have his own counsel present when Hardin and Lowry were deposed. We therefore hold that the court did not err in permitting the use of the two depositions in Knoblett's case as well as Ikerd's.
 
 
 38
 The plaintiffs contend that the District Court erred in rejecting a hearsay objection to the part of Hardin's deposition where Hardin, after testifying that he was at the scene of the collision when the police arrived, was permitted to state, over objection, that he gave his name to the police 'as being a witness to' the collision. We do not agree. Hearsay evidence is that which derives its value, not solely from the credit to be given the witness testifying, but in part from the veracity of some other person. The Indiana courts have characterized hearsay evidence as the testimony of a witness relative to the declarations of another for the purpose of proving the facts asserted by the declarant. Griffin, Exr. v. Thrall,109 Ind.App. 141, 29 N.E.2d 345, 351. Here the credit relied upon for the statement that Hardin witnessed the collision is the witness' own veracity.
 
 
 39
 Plaintiffs make a related contention concerning a question propounded at the trial during cross-examination of plaintiffs' witness, police officer James Michael. On direct examination Michael had testified that he was the officer who investigated the accident and that he had arrived at the scene of the collision at about 5:00 a.m. On cross-examination he was asked and answered in the affirmative, without any objection being interposed, if in connection with his investigation he had determined that there was an eye-witness, by the name of John Hardin. The plaintiffs urge that the court erred in overruling their hearsay objections to two questions and answers which immediately followed and elicited that Michael had obtained the name and address of John Hardin, the person who claimed to have been a witness. Except for the disclosure of Hardin's address, the testimony objected to added nothing to what Michael had already testified to without objection, i.e., that his investigation determined that Hardin claimed that he was an eye-witness to the collision. Conceding, arguendo, that the court's ruling was incorrect, nevertheless, no prejudicial error requiring a reversal would be demonstrated. Here the testimony objected to was merely cumulative and added nothing material of probative value. Harter v. Brindle (Ind.App.1969) 251 N.E.2d 590, 595.
 
 
 40
 The certificate of the reporter[4] attached to Hardin's deposition contained a recital to the effect that the reporter had made numerous attempts to contact Hardin to have him read and sign the deposition, but that he avoided her and in effect refused to read or sign it. Plaintiffs contend that the District Court erred in refusing their request that the reporter's certificate be read to the jury. They argue that the certificate is 'relevant to the part introduced' within the meaning and requirement of Rule 26(d)(4) of the Federal Rules of Civil Procedure. The purpose of the rule is to preclude the selective use of deposition testimony, which might serve to convey a misleading impression. Westinghouse Electric Corp. v. Wray Equipment Corp., 1 Cir., 286 F.2d 491, 494. The certificate is no part of the testimony of the deponent, and is beyond the scope of both the language and the purpose of the rule. And, the fact that the deposition is not signed by the deponent did not preclude its use at the trial. In this respect Rule 30(e) of the Federal Rules of Civil Procedure provides in pertinent part:
 
 
 41
 'If the deposition is not signed by the witness, the officer shall sign it and state on the record * * * the fact of the refusal to sign together with the reason, if any, given therefor; and the deposition may then be used as fully as though signed, unless on a motion to suppress under Rule 32(d) the court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part.'
 
 
 42
 The court, consistent with the provisions of Rule 30(e), favorably resolved the question of the deposition's admissibility and use after hearing argument of counsel on plaintiffs' motion to suppress the deposition. The reading of the reporter's certificate to the jury could have served no purpose other than to invite the jury to speculate with respect to a subject beyond the jury's concern.
 
 ALEXA LEE DEPOSITION TESTIMONY
 
 43
 Plaintiffs assert the presence of error requiring reversal arising from the District Court's ruling denying their motion for the admission of the deposition of Alexa Lee into evidence and that it be read to the jury. In his deposition Hardin stated on cross-examination that he was not being paid to testify. Alexa Lee, Hardin's ex-wife, who had been granted a divorce from him between the time of the taking of his deposition and the taking of hers, stated in her deposition that Hardin had told her that he received fifty dollars following the taking of his deposition, but would not sign it unless he received more. Plaintiffs argue that inconsistency between Hardin's deposition testimony and what Alexa Lee stated he subsequently told her made the latter admissible for the purpose of impeaching Hardin's credibility. But Hardin's deposition is consistent with an affidavit made by Lapworth's counsel, and filed in opposition to plaintiffs' motion to suppress the Hardin deposition, to the effect that after Hardin had been deposed it was agreed that fifty dollars would remunerate him for his time, inconvenience and expense in appearing for his deposition, and that he was paid the fifty dollars. Unless the existence of inconsistency permitted the use of the portion of Alexa Lee's deposition to which reference has been made, as being proper for the jury to consider in its evaluation of Hardin's credibility, neither the portion referred to nor the balance of the deposition was admissible. It was otherwise entirely irrelevant and replete with hearsay. We are of the view that the court properly excluded the Alexa Lee deposition. When it is considered in the context of the manner in which the questions put to Hardin were framed, the difference between Hardin's deposition answer and what his ex-wife claims he subsequently told her does not reflect such inconsistency as would make the court's ruling reversible error. We are of the opinion that the court's ruling was well within its discretion to reject what, absent patent inconsistency, was wholly inadmissible testimony. Cf. Grunewald v. United States, 353 U.S. 391, 418-419, 77 S.Ct. 963, 1 L.Ed.2d 931.
 
 
 44
 The court's ruling refusing to allow plaintiffs to put Lapworth's attorney on the stand for examination which would produce testimony that he made payment of the fifty dollars to Hardin was likewise proper. For the reasons set forth above such testimony would not have established an inconsistency admissible for the purpose of impeaching Hardin's credibility.
 
 
 45
 DENIAL of DISCOVERY and RESTRICTION of CROSS-EXAMINATION
 
 
 46
 The statements taken by Lois Hathaway from Ikerd and Knoblett while they were still hospitalized, which have been previously referred to herein, were in response to questions put by Ed Willard, an insurance adjuster. Willard had employed Lois Hathaway, a public stenographer, for such purpose. After the pre-trial conference plaintiffs attempted to depose Hathaway and Willard. A motion made by Lapworth to stay the taking of such depositions was granted. On March 14, 1969, following two earlier pre-trial conferences, notice was given of a pre-trial conference to be held April 9, 1969. The notice contained an order that the parties complete all discovery prior to the date for such pretrial conference. The motion of Ikerd for leave to depose Hathaway and Willard disclosed that discovery was sought for the purpose of procuring information with respect to the statements given by Ikerd and Knoblett. The court refused to permit the belated attempts of Ikerd and Knoblett to depose Hathaway and Willard, but ordered Lapworth to produce the statements taken from Ikerd and Knoblett and furnish them to counsel for plaintiffs. They were so produced and furnished, and plaintiffs had a copy of the statements approximately thirty days prior to the trial. Since plaintiffs were furnished a copy of the statements taken from Ikerd and Knoblett at the hospital there can be no complaint that they were taken by surprise by the testimony Lois Hathaway gave at the trial. Under the circumstances here presented it cannot be said that the court abused its discretion in refusing and rejecting plaintiffs' belated attempts to depose Hathaway and Willard.
 
 
 47
 Plaintiffs further complain that the court erred in restricting the scope of the cross-examination of Lois Hathaway concerning Willard's occupation. In this respect the court sustained an objection to a question asked by plaintiffs' counsel with respect to whether at the time the witness accompanied Willard to the hospital to take statements from Ikerd and Knoblett, Willard 'was an insurance adjuster'. In a bench conference which followed the court restricted the questioning of Hathaway with respect to Willard's occupation, but the plaintiffs were permitted to and did ask questions of Hathaway before the jury eliciting answers that Willard in questioning Ikerd and Knoblett was representing Lapworth; that he had employed the witness to take the stenographic statements; and that Willard had hired her on other occasions to take stenographic statements.
 
 
 48
 Indiana recognizes the rule that in a tort action for damages evidence as to insurance carried by a defendant is generally inadmissible not only because it is irrelevant, but also because it may prejudice the jury against the defendant. Miller v. Alvey, 246 Ind. 560, 207 N.E.2d 633, 637-638. The recent decisions of the Indiana courts in Pickett v. Kolb, (Ind.Supreme Ct.1968) 237 N.E.2d 105 and Yates v. Grider, (Ind.App.1969)251 N.E.2d 846, relied upon by plaintiffs, are inapposite here. In those cases it was held that although the answer might reveal or indicate the existence of insurance it is proper to ask an expert witness on cross-examination as to who is compensating him for the purpose of showing his interest in the litigation or possible bias. But, here, Willard was not the witness who was being cross-examined; he was not called as a witness at the trial.
 
 
 49
 Counsel was not precluded from showing the employment and compensation of the witness, Hathaway, and was permitted to ask all relevant questions which might have a bearing on her interest in the case or possible bias. The question objected to did not go to Hathaway's credibility. And the credibility of Willard, or his possible interest or bias was not relevant. He did not testify. The question put to Hathaway was improper. It could serve no purpose other than to inject an irrelevant matter-- an indication that Lapworth carried insurance.
 
 
 50
 On this phase of the appeals we conclude that the District Court did not err in its rulings concerning the belated attempt to depose Hathaway and Willard, and the cross-examination of Hathaway.
 
 
 51
 We recognize that the plaintiffs have advanced certain peripheral and subsidiary contentions which we have not discussed. We have considered them all and find them lacking in merit. They present nothing which would justify a reversal. It would serve no useful purpose to further extend this opinion to detail and discuss them.
 
 
 52
 The judgment orders of the District Court are affirmed.
 
 
 53
 Affirmed.
 
 
 
 [1]
 Jurisdiction is grounded on diversity of citizenship
 
 
 [2]
 The defendants-appellees are sometimes hereinafter referred to as 'Lapworth' and 'Chrysler', respectively
 
 
 [3]
 Rule 56(c) provides: 'The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *'
 
 
 [4]
 The reporter was the notary before whom the deposition was taken