383 N.E.2d 473 (1978)
Michael L. STAPINSKI, Plaintiff-Appellant,
v.
WALSH CONSTRUCTION CO., Inc., Defendant-Appellee.
No. 3-376A48.
Court of Appeals of Indiana, Third District.
December 27, 1978.
Rehearing Denied February 9, 1979.
*474 Saul I. Ruman, Hammond, for plaintiff-appellant.
Robert P. Kennedy, Larry Evans, Valpariso, Richard R. McDowell, James S. Downing, Cadick, Burns, Duck & Neighbours, Indianapolis, for defendant-appellee.
STATON, Judge.
On September 5, 1972, Michael Stapinski sustained serious personal injuries while driving his automobile. Stapinski was injured when a portion of the front drive shaft of a 1964 Ford truck broke loose and flew through the windshield of his car. At the time of the accident, the truck was owned and operated by Security Fence Co., Inc. ("Security"). Security had purchased the truck some fifteen months earlier from Walsh Construction Company ("Walsh"). Walsh had purchased the truck new from a dealer in 1964.
Stapinski's amended complaint named Walsh as one of the defendants. The trial court, in granting a motion by Walsh for summary judgment, entered the following order:
"Court now finds:
"That Walsh Construction sold the truck in question to Security Fence as is with no warranties for a little over $600;
"That Security Fence inspected and examined said truck prior to purchase. The truck had been used for several years by Walsh Construction on their private property and had not been licensed;
"That Security Fence had the truck licensed and inspected and used it on the public highways in this state;
"That approximately 15 months after the sale from Walsh to Security Fence, an accident occurred with the truck which was attributable to the lack of lubrication to one of the universal joints. Lack of lubrication was attributable to a grease fitting;
"That prior to the accident Security Fence knew the grease fitting was missing;
"No steps were taken by Security Fence to replace it;
"That Security Fence used the truck on the highway knowing the fitting was missing;
"Court finds that the law is with the Defendant, Walsh Construction Company, and against the Plaintiff, Michael L. Stapinski.
"IT IS THEREFORE, ORDERED that Judgment be entered in favor of the Defendant, Walsh Construction and against Plaintiff Stapinski.

*475 "ALL OF WHICH IS ORDERED, ADJUDGED AND DECREED by the Court this 19th day of September, 1975."
In his appeal to this Court, Stapinski challenges the propriety of summary judgment under the aforementioned facts.
We reverse.
Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Rules of Procedure, Trial Rule 56. In determining whether a genuine issue exists, the facts set forth by the affidavits filed in opposition to the motion for summary judgment must be taken as true, and any doubt must be resolved against the party seeking summary judgment. Union State Bank v. Williams (1976), Ind. App., 348 N.E.2d 683.
It is not disputed that Walsh was the seller of a used motor vehicle and that Stapinski was injured subsequent to the sale as a result of the defective condition of the motor vehicle. Additionally, Stapinski concedes that Walsh was not in the business of selling used motor vehicles. If, under these facts and as a matter of law, there can be no liability on Walsh's part, then the order of summary judgment should be affirmed.
Our courts have not yet decided this precise issue. A number of jurisdictions have imposed liability on used care dealers for injuries caused by vehicles which were defective at the time of the sale.[1] Annot., 53 A.L.R.3d 337 (1973). Those jurisdictions have proceeded on the theory of strict liability as it is embodied in the Restatement (Second) of Torts, § 402A (1965),[2] which reads as follows:
"§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer.
"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
"(a) the seller is engaged in the business of selling such a product, and
"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
"(2) The rule stated in Subsection (1) applies although
"(a) the seller has exercised all possible care in the preparation and sale of his product, and
"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."
Walsh contends that since it is not in the business of selling motor vehicles, it cannot be held liable to Stapinski's injuries. However, § 402A does not stand for the proposition that only those persons engaged in the business of selling are subject to liability for damages caused by defective products. Rather, it stands for the proposition that only those persons engaged in the business of selling are subject to strict liability. Comment f to § 402A recognizes the proposition that an "ordinary person" (i.e., one who is not in the business of selling) who makes an isolated sale will be held liable to the buyer or third person for his negligence. Thus, the fact that Walsh is not in the business of selling motor vehicles does not preclude liability. Instead, that fact merely forces Stapinski to prove an additional element, to-wit: negligence on Walsh's part, before he can recover from Walsh.
In order to establish actionable negligence, Stapinski must show: (1) that Walsh owed him a duty; (2) that Walsh breached that duty; and (3) that Walsh's breach was the proximate cause of the damages *476 suffered by Stapinski. Taylor v. Indiana Bell Telephone Company (1970), 147 Ind. App. 507, 262 N.E.2d 399. If, as a matter of law, we find that there was no duty, or if the undisputed facts show that there was no breach or that, if there was a breach, the breach was not the proximate cause of the injuries, then we must affirm the judgment of the trial court.
Walsh contends that it owed no duty to Stapinski. We disagree. The law requires every person to exercise due care to avoid foreseeable injury to others. Lake Shore & M.S. Ry. Co. v. Brown (1908), 41 Ind. App. 435, 84 N.E. 25. Because it is foreseeable that defective motor vehicles could cause injuries to people using the highways in close proximity to the defective vehicle, persons who are aware of the defect are under a duty to exercise due care and to take reasonable precautions to avoid the injuries. The duty to take reasonable precautions is not limited to the owner of the defective vehicle. Ownership is merely one factor to be considered in determining what measures constitute "reasonable precautions."
In reference to the matter before us, we hold that, as a general rule, a non-dealer who sells a used motor vehicle is not under a duty, as part of the sale, to repair any defects which might exist in the vehicle at the time of the sale.[3] This is true of even those defects which make the vehicle dangerous for use on the highways. The duty to make the vehicle safe for use on the highways has been statutorily imposed upon the owner and driver of the vehicle.[4]
Implicit in the duty to make the vehicle safe for use on the highways is the duty to make a reasonable inspection of the vehicle to determine if it is defective. However, some defects which make a vehicle dangerous are not discoverable even upon a reasonable inspection. Where a seller is aware of such a defect, public policy demands that we impose upon him a duty of disclosure. To hold otherwise would allow a seller, through his intentional concealment of a dangerous defect, to jeopardize the safety and health of the many people who use our roads and highways.
We therefore adopt, as the law of Indiana, the Restatement, (Second) of Torts, § 388 (1965), which reads as follows:
"§ 388  Chattel Known To Be Dangerous For Intended Use.  One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
"(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
"(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."
The authors of § 388 have adopted a very broad definition of "supplier" so as to include "any person, who for any purpose or in any manner gives possession of a chattel *477 for another's use... ." § 388, comment c. § 388 does not limit the liability to suppliers of new chattel, nor do we.
Our decision today does not impose upon the seller of a used motor vehicle the duty to disclose all defects existing at the time of the sale. The implied duty placed upon the owner and driver to make a reasonable inspection will provide the seller, in most instances, with sufficient reason to believe that the owner or driver will discover any patent defects prior to operating the vehicle. Thus the seller need not inform the buyer of any patent defects. Nor is the seller obligated to disclose those defects which are "non-dangerous" in their nature. Instead, our holding requires the seller to disclose those defects which make the vehicle dangerous and which the seller has no reason to believe the buyer will discover.
As noted earlier, in determining the propriety of summary judgment, all factual disputes must be resolved in favor of the party opposing the judgment. Resolving the disputed matters in favor of Stapinski, we are confronted with the following facts:
(1) the missing grease fitting rendered the 1964 Ford truck dangerous;
(2) Walsh knew that the fitting was missing and was aware of the danger caused thereby; and
(3) Walsh had no reason to believe Security would realize the dangerous condition of the truck.
Under those circumstances, § 388 would impose a duty to disclose. Therefore, we cannot predicate an affirmance of the summary judgment on the theory that Walsh owed no duty.
Assuming arguendo that the facts warrant the conclusion that Walsh was under a duty to disclose to Security the fact that there was supposed to be a grease fitting on the universal joint, there is no evidence to indicate that Walsh did make such a disclosure. Accordingly, we cannot predicate an affirmance of the judgment on the theory that there was no breach.
Where a purchaser is aware or should be aware that an article is dangerously defective, and the purchaser uses the article without remedying the defect, the liability for injuries to third persons therefrom rests upon the purchaser, and not upon the seller. Travis v. Rochester Bridge Co. (1918), 188 Ind. 79, 122 N.E. 1. Therefore, assuming Walsh was under a duty to disclose but failed to do so, Walsh will nevertheless be relieved of liability if it is determined that Security used the vehicle knowing, or under circumstances from which it should have known, that the vehicle was dangerously defective.
The trial court found:
"That prior to the accident Security Fence knew the grease fitting was missing;
"No steps were taken by Security Fence to replace it;
"That Security Fence used the truck on the highway knowing the fitting was missing... ."
If those findings are correct, then Walsh will be insulated from liability. However, the record does not, when examined pursuant to the standards required for reviewing a summary judgment, support the trial court's finding.
Alan Tucker was an employee of Security whose duty it was to lubricate and change the oil on Security's vehicles. In an affidavit filed in opposition to the motion for summary judgment, Tucker averred that:
"During one of the first lubrications I did on this truck I noticed that one of the universal joints on the front wheel drive shaft had no grease fitting. Dirt and road tar was pretty heavily caked on this area, and I could find no place for a grease fitting. I did not know or think that there was supposed to be one there and I didn't know that one had been broken off. When I noticed that there was no grease fitting on this universal joint, I assumed that it was a self-contained unit, that is, one that is pregreased and does not need greasing."
*478 To state, as the trial court did, that Security knew a grease fitting was missing implies that Security knew, or, through the exercise of due care, should have known that there was supposed to be a grease fitting on the universal joint. Tucker's averments, which we must accept as true, show that there is an issue as to whether Security had actual knowledge there was supposed to be such a fitting. The question as to whether Security should have realized that there was supposed to have been a fitting on the universal joint is one for the finder of facts. Did Walsh have reason to believe that Security would discover the absence of the fitting? Universal joints can conceivably become so caked with tar and dirt that the hole in which a fitting is to be inserted would not be visible. Some universal joints contain no grease fittings at all. Therefore, even though Security had a duty to make a reasonable inspection of the truck, we cannot say as a matter of law that that inspection would have put it on notice that a fitting was missing. That is a question of fact for the jury and one which, for the purposes of this appeal, must be decided in Stapinski's favor. In essence, the fact-finder will have to determine whether it was reasonable for Tucker to assume that the universal joint in question was a self-contained unit that required no lubrication, or whether Tucker should have made further inquiries.
Accordingly, we cannot affirm the judgment on the theory that Walsh's failure to disclose was not the proximate cause of the injuries.
The order of summary judgment is reversed and the matter is remanded to the trial court for proceedings consistent with this opinion.
BUCHANAN, C.J. (by designation), concurs.
HOFFMAN, J., dissents with opinion.
HOFFMAN, Judge, dissenting.
I respectfully dissent from the majority opinion.
Plaintiff-appellant Michael Stapinski was driving along State Road 149 in Porter County on September 5, 1972, when components of the front drive shaft of a 1964 Ford truck, which was passing by, flew from the truck and struck his windshield, causing serious personal injury. The truck was owned by Security Fence Company (Security) and was being driven by an employee thereof. In a personal injury action brought against Security, appellant subsequently joined defendant-appellee Walsh Construction Company (Walsh) from whom Security had purchased the seven-year-old truck as a used vehicle some fifteen months earlier. This appeal arises out of the trial court grant of a motion for summary judgment in favor of appellee Walsh. Thus, the sole issue to be considered on review is the propriety of rendering summary judgment in this case.
Summary judgment is a procedural device enabling prompt disposition of cases where there is no genuine issue of material fact to be determined in a trial, either by court or jury. Hayes v. Second Nat. Bank of Richmond (1978), Ind. App., 375 N.E.2d 647. In determining whether a genuine issue precluding summary judgment exists, facts established by the party opposing the motion must be taken as true and all doubts must be resolved against the proponent of the motion. Crase v. Highland Village Value Plus Pharmacy (1978), Ind. App., 374 N.E.2d 58. The facts to be considered are contained in the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any testimony given. Ind. Rules of Procedure, Trial Rule 56(C).
The facts derived from the instant record disclose that Walsh, a general contractor of building construction, purchased the truck in question new from McAnery Ford in 1964. The vehicle was one of several identical trucks purchased by Walsh and used solely to haul workmen and materials on the construction site of the Burns Harbor project. The vehicle was never licensed for regular use on public highways. Security is a specialty contractor engaged in the installation of chain link fencings and steel rolling doors. Frank Bolin, president of Security, had previously worked as a foreman for Walsh on the Burns Harbor site and knew how the trucks were utilized. Sometime *479 after completion of the Burns Harbor project, while the trucks were parked in Walsh's equipment yard, Bolin stopped to inquire if Walsh had any trucks for sale. The reply was that Walsh would be willing to sell any of the 1964 trucks previously mentioned. Bolin was told that he could have his choice of those trucks for $600 and was given an opportunity to inspect the trucks at that time so as to make a selection. Bolin looked at the trucks and later sent two of Security's employees to examine the trucks and make a final selection. These employees observed that all of the trucks were old and used. They selected a truck with four-wheel drive and then were allowed to replace the tires with some from one of the remaining trucks. The salesman at Walsh was not present during this inspection and made no representations as to the condition of the truck, nor did Security inform Walsh of its intended use of the vehicle. The sale was completed "AS IS, WHERE IS."
Security later picked up the truck and thereafter had the vehicle licensed for use on the public highways, safety inspected, and began using it to haul supplies and equipment to job locations. At this time Security had four other trucks and tried to maintain the vehicles such that each was lubricated and had the oil changed every month. Alan Tucker was the employee responsible for maintenance on the 1964 Ford truck. The first time that he was lubricating the truck Tucker noticed that the front one of four identical grease fittings on the universal joints was missing. He assumed that the one universal joint was self-contained and did not need to be greased.
For purposes of the summary judgment motion the parties agreed that the front universal joint was missing a grease cap, and that failure to grease the joint caused the front drive shaft to break and injure appellant.
In an action based on negligence the plaintiff has a burden of proving each of four essential elements: a duty owed by the defendant, his failure to adopt the standard of care required by the duty, and injury to the plaintiff resulting from the breach of that standard of care.
The element of duty is fundamental to a negligence action and must first be established. As stated in 21 I.L.E. Negligence § 202:
"Ordinary negligence is a question of fact, or a mixed question of law and fact, involving the preliminary question, which is for the court, as to whether defendant owed any duty of care to plaintiff. ."
Logically, there can be no actionable negligence where there is no act or service or contract which a party is bound to perform or fulfill. 57 Am.Jur.2d, Negligence § 33.
Appellant admits in his brief that "lack of duty ... is singularly proper justification for granting total summary judgment." This issue is a question of law for the trial court to determine. Miller v. Griesel et al. (1974), 261 Ind. 604, 308 N.E.2d 701; Palmer v. State (1977), Ind. App., 363 N.E.2d 1245; Petroski v. Northern Indiana Pub. Service Co. (1976), Ind. App., 354 N.E.2d 736; Cleveland, etc., R. Co. v. Means (1914), 59 Ind. App. 383, 104 N.E. 785.
Therefore, if the trial court correctly found that Walsh did not owe some legal duty, then the grant of summary judgment must be affirmed. Two theories have been advanced by appellant as to why Walsh was under a legal duty to conform his conduct to the requisite standard of care for the protection of appellant: duty as a seller of a motor vehicle and duty statutorily imposed upon an owner and operator of a motor vehicle.
There is a recognized duty imposed upon a seller of a product to inspect the product prior to sale. The extent to which a seller is required to inspect and warn of known defects or danger determines the scope of the seller's liability. Appellant raises this issue in the context of 2 Restatement of Torts (2d), § 388 (1965), which reads as follows:
"§ 388  Chattel Known To Be Dangerous For Intended Use.  One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the *480 other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."
Under this section knowledge of a defect is material to a duty on the part of a seller to exercise reasonable care to inform or warn the buyer of possible danger which is peculiarly within the seller's knowledge. Failure to warn may be a basis for holding a seller liable in negligence. Comment k of the Restatement specifies that the seller's duty to warn becomes necessary only if the seller has no reason to expect that the user will discover the chattel's condition and realize the danger involved (our emphasis). Comment k further states that there is no duty to inform the buyer of a condition which a casual inspection will disclose, unless it is a condition which only persons of special experience would realize to be dangerous. Thus, assuming arguendo that Walsh knew that the truck was defective when sold to Security, circumstances of the sale still negate its liability. Security, who initiated the sale, was responsible for inspecting and selecting the vehicle before purchase. The truck was known to be old and no representations were made as to its condition. Further, both buyer and seller were engaged in the construction industry and heavy duty trucks such as the 1964 Ford were common and necessary to both concerns. Walsh did not hold itself out as an expert with trucks, nor as an expert in selling used trucks. Walsh did not have knowledge of Security's intended use of the vehicle although Security knew the vehicle had been used solely on private property. It was therefore reasonable for Walsh to assume that the buyer possessed at least the same degree of skill and knowledge in dealing with such equipment. Again assuming that the grease cap was the cause of the accident, knowledge that it was missing and of the consequences thereof should have been as readily discoverable by Security as by Walsh. Walsh cannot be held liable as a seller who failed to warn under these circumstances.
Lending support to this position is the fact that some jurisdictions have refused to impose a seller's duty to test or inspect a chattel for dangerous characteristics where the buyer does not rely upon the seller to make an inspection, or where the buyer had the best opportunity to make such inspection, or where the seller was merely a former owner. See: 6 A.L.R.3d 12. Any one of these premises are sufficient to relieve Walsh's liability, but all three apply to the facts. It is apparent that Security did not rely upon Walsh to inspect the truck. Frank Bolin was told that he could purchase his choice of the trucks available for sale. No one from Walsh was present at the time that either Bolin or the other two employees from Security chose the truck that was purchased. These facts do not indicate any reliance on the part of Security. That a seller would be excluded from liability under such conditions was outlined by the Seventh Circuit Court of Appeals in Ikerd v. Lapworth (1970), 435 F.2d 197, at 201, wherein it was stated that where a seller "is sought to be held liable for a defect which results in injury to an ultimate consumer or third-party the question is essentially one of whether the responsibility for discovery and prevention of the dangerous defect had been shifted to an intermediate party who is justifiably relied upon to inspect the product and remedy any dangerous defect." In Ikerd the court determined that plaintiff's immediate seller, the used vehicle dealer, could be liable for plaintiff's resulting injuries but that the new car dealer who had wholesaled the new car to the used vehicle dealer was relieved from responsibility. This result was reached because the new car dealer had sold the vehicle without warranties, whereas the seller had inspected the vehicle and reconditioned it prior to *481 selling it. Thus, in Ikerd summary judgment in favor of the prior seller was upheld because responsibility had been shifted to the intermediary. Due to the facts that security solicited the sale in the instant case fifteen months prior to the accident, that the truck was sold "AS IS, WHERE IS," that Security inspected the truck and had it licensed and twice safety inspected, the same result is properly reached, that is, liability was shifted to Security as an intermediate party. Through its actions Security took a much more active role in placing this vehicle on the public highways in a position to injure appellant than did Walsh, and so Walsh could justifiably rely upon Security to inspect the product and remedy any dangerous defect. Also see: Thrash v. U-Drive-It Co. (1953), 158 Ohio St. 465, 110 N.E.2d 419. Thrash represents the proposition that as a mere former owner of the truck Walsh's responsibility to warn of known defects is even less than that of a dealer in used vehicles. Walsh neither initiated this sale nor was it motivated by profit to place this vehicle into the stream of commerce as it is not engaged in the business of dealing in used vehicles. Walsh was in no position to insure against personal injury to one in appellant's position, having never contemplated use of the vehicle for regular transportational purposes. Thus, given that the basic theory of enterprise liability dictates that manufacturers and sellers should absorb injuries caused by their products as part of the cost of doing business, there is a lack of justification to hold Walsh liable.
Appellant's second contention of liability is that Walsh owed a duty as an owner and operator of a motor vehicle to make the vehicle safe for use, which has been statutorily imposed. IC 1971, 9-8-6-2(a) (Burns Code Ed.) reads as follows:
"It is a misdemeanor for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person ..."
The definitional statute, IC 1971, 9-4-1-11(d) (Burns Code Ed.) provides the meaning of the term owner: "A person who holds the legal title of a vehicle ..."
It is clear that Walsh was not the owner of the 1964 truck at the time that the accident occurred. Security had owned the vehicle for fifteen months and is the party upon which the statute imposes a duty of care. Once the truck had been sold to Security, Walsh could no longer exercise any control over the vehicle nor prevent it from being driven on the public highway. Further, even at the time of sale this statute did not apply to Walsh, nor was Walsh ever responsible for having the truck safety inspected because it never drove or moved the vehicle on a public highway but rather used the vehicle exclusively on private property. Security apparently assumed responsibility for having the vehicle safety inspected since it did not inform Walsh of its intent to operate it on the public highways.
Therefore, the trial court was correct in granting summary judgment as a matter of law in favor of Walsh since it was under no legal duty to appellant.
I would affirm the trial court.
NOTES
[1] In the case before us, there would clearly be no liability on Walsh's part if the vehicle was not defective at the time of the sale. However, the record shows that there is a dispute as to when the vehicle became defective. Because any doubts must be resolved against Walsh, we must assume, for the purposes of this appeal, that the vehicle was defective at the time of the sale.
[2] § 402A has been adopted as the law of Indiana. Cornette v. Searjeant Metal Products, Inc. (1970), 147 Ind. App. 46, 258 N.E.2d 652.
[3] However, the seller may incur a contractual duty to repair such defects.
[4] IC 1971, X-X-X-XXX, Ind. Ann. Stat. § 47-2301 (Burns 1965), provides:

"Vehicles without required equipment or in unsafe condition.  No person shall drive or more on any highway any motor vehicle . . unless the equipment upon any and every said vehicle is in good working order . . and said vehicle is in such safe mechanical condition as not to endanger the driver or other occupant or any person upon the highway."
Additionally, IC 1971, 9-8-6-2 (Burns Code Ed., Supp. 1976), provides:
"Scope and effect of regulations.  (a) It is a misdemeanor for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person... ."